IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARGARET DEAL

    Plaintiff(s)

    vs.

Case No. <u>2:25-cv-00303-MJH</u>

LAWRENCE COUNTY, SUSAN PAPA, )
in her official and individual capacity, )
JASON MEDURE, in his official and )
individual capacity, DEANNA )
DEMONACO, in her official and )
individual capacity, LAWRENCE )
COUNTY CHILDREN AND YOUTH )
SERVICES, JOHN BOUT, in his official )
and individual capacity, CRAY YOUTH )
AND FAMILY SERVICES,  TANYA )
MONTGOMERY, in her official and )
individual capacity, JOHN )
BONGIVENGO, in his official and )
individual capacity, NORA DIBUONO, )
in her official and individual capacity, )
ELAINE PEAK, in her official and )
individual capacity, HEATHER STARR, )
in her official and individual capacity, )
DYLAN NEAL, in his official and )
individual capacity, CAITLYN )
WINDHORST, in her official and )
individual capacity, MARISSA HEANEY, )
in her official and individual capacity, )
THE BAIR FOUNDATION, MARY )
BURROWS, in her official and individual )
capacity, CHASITY MINNITTE, in her )
official and individual capacity, DANIEL )
ALSDORF, in his official and individual )
capacity )
    )
    )
    Defendant(s)    )    JURY TRIAL DEMANDED

1

## AMENDED COMPLAINT

*AND NOW*, the Plaintiff, Margaret Deal, Pro Se and hereby files this Complaint in a Civil Action, averring as follows:

### JURISDICTION AND VENUE

1)      This Court has original jurisdiction under 28 U.S.C. § 1331 and § 1343 over Plaintiff's claims arising under the First, Fourth, and Fourteenth Amendments via 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794). Supplemental jurisdiction over state law claims for intentional infliction of emotional distress, defamation, tortious interference, abuse of process, and wrongful use of civil proceedings is proper under 28 U.S.C. § 1367(a), as they arise from the same acts as federal claims, as detailed below.

2)      Plaintiff's claims address independent violations of her First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, Title II of the ADA (42 U.S.C. § 12132), and state tort law, stemming from Defendants' warrantless home entries, evidence suppression, retaliation, and disability discrimination during dependency proceedings. This action does not seek to issue, modify, or review state child custody orders, but to remedy federal harms distinct from state court determinations.

3)       Plaintiff's claims under 42 U.S.C. § 1983 and Pennsylvania law are timely, as Defendants' misconduct from 2020 to 2025, including warrantless removal, false reports, and retaliation, forms a pattern of ongoing harm, as detailed below.

4)      Venue is proper under 28 U.S.C. § 1391(b), as all events occurred in Lawrence County, Pennsylvania, within this District, and Defendants are subject to personal jurisdiction here.

2

**5)**      Plaintiff filed an administrative complaint with the U.S. Department of Health and Human Services Office for Civil Rights on June 25, 2024, addressing disability discrimination, which was closed without resolution on March 27, 2025, despite assurances of outcome disclosure. Exhaustion is not required for ADA Title II claims, but this filing demonstrates Defendants' notice of claims for discrimination.

## PARTIES

**6)**      Plaintiff Margaret S. Deal is an adult individual residing in Lawrence County, Pennsylvania, and the natural mother of minor children K.G., M.G., and A.G. Plaintiff proceeds Pro Se.  She is a nationally certified Pharmacy Technician.

**7)**      Defendant Lawrence County, with offices at 430 Court Street, New Castle, Pennsylvania 16101, is a political subdivision of the Commonwealth of Pennsylvania, acting under color of state law, responsible for overseeing Lawrence County Children and Youth Services (LCCYS) and serving as the policy-making entity that supervises and manages LCCYS's child welfare activities.

**8)**      Defendant Lawrence County Children and Youth Services, with offices at 1001 E. Washington Street, New Castle, Pennsylvania 16101, is a county agency under Lawrence County, acting under color of state law, responsible for investigating child abuse and neglect, filing dependency petitions in juvenile court, and managing dependency proceedings involving Plaintiff's children.

**9)**      Defendant Susan Papa was a Hearing Master for the Lawrence County Court of Common Pleas, Juvenile Division, in Lawrence County, Pennsylvania, acting under color of state law, responsible for presiding over dependency proceedings involving Plaintiff's children.

**10)**      Defendant Heather Starr is a Caseworker Supervisor for Lawrence County

3

Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for casework in Plaintiff's dependency proceedings.

**11)** Defendant Elaine Peak is a Caseworker Supervisor for Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for casework in Plaintiff's dependency proceedings.

**12)** Defendant Caitlyn Windhorst is a Caseworker for Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for casework in Plaintiff's dependency proceedings.

**13)** Defendant Marissa Heaney is a Program Specialist for Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for casework in Plaintiff's dependency proceedings.

**14)** Defendant John Bout is the Director of Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for overseeing LCCYS's operations and dependency proceedings involving Plaintiff's children.

**15)** Defendant Cray Youth and Family Services, with offices at 332 Highland Avenue, New Castle, Pennsylvania 16101, is a private entity contracted by LCCYS, acting under color of state law, to provide case management services in dependency proceedings.

**16)** Defendant Tanya Montgomery is an Assistant Supervisor for Cray Youth and Family Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for managing Plaintiff's case in dependency proceedings.

**17)** Defendant John Bongivengo is a Solicitor for Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for representing LCCYS in dependency proceedings involving Plaintiff's children.

**18)**        Defendant Nora DiBuono is a Solicitor for Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for representing LCCYS in dependency proceedings involving Plaintiff's children.

**19)**        Defendant The Bair Foundation, with offices at 245 High Street, New Wilmington, Pennsylvania 16142, is a private foster agency contracted by LCCYS, acting under color of state law, to provide foster care services in Plaintiff's case.

**20)**        Defendant Mary Burrows is a Foster Care Specialist for The Bair Foundation in Lawrence County, Pennsylvania, acting under color of state law, responsible for foster care services in Plaintiff's case.

**21)**        Defendant Chastity Minnitte is a foster parent in Crawford County, Pennsylvania, acting under color of state law through her contract with LCCYS, responsible for providing foster care for Plaintiff's children.

**22)**        Defendant Daniel Alsdorf is a foster parent in Crawford County, Pennsylvania, acting under color of state law through his contract with LCCYS, responsible for providing foster care for Plaintiff's children.

**23)**        Defendant Deanna Demonaco is the Lawrence County Orphans Court Senior Chief Deputy in Lawrence County, Pennsylvania, acting under color of state law, responsible for managing court records related to dependency proceedings.

**24)**        Defendant Jason Medure is the Lawrence County Solicitor in Lawrence County, Pennsylvania, acting under color of state law, responsible for representing Lawrence County in matters involving LCCYS.

**25)**        Defendant Dylan Neal is a Caseworker for Lawrence County Children and Youth Services in Lawrence County, Pennsylvania, acting under color of state law, responsible for

casework in Plaintiff's dependency proceedings.

**26)**      All Defendants acted in Lawrence County, Pennsylvania, within the Western District of Pennsylvania.

## PRELIMINARY STATEMENT

**27)**      From 2020 to 2025, Defendants Lawrence County, LCCYS, John Bout, Heather Starr, Susan Papa, and others engaged in ongoing violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 and Title II of the ADA (42 U.S.C. § 12132) by conducting warrantless home entries, suppressing evidence, retaliating against protected speech, and discriminating based on perceived disability (ADHD, anxiety, PTSD). Defendants' bad-faith actions, including a 99.73% adoption success rate (368 granted, 1 denied, 2014–2023), falsified reports, and hiring a conflicted former LCCYS employee as a therapist in 2025, obstructed reunification, caused 44 months of separation, $56,817.75 in losses, and severe emotional distress. Plaintiff seeks redress for these federal violations, not to alter state custody orders, but to halt ongoing misconduct and secure damages (Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982)).

**28)**      Defendant Lawrence County Children and Youth Services (LCCYS) is currently operating under its third provisional license, a status indicating repeated regulatory failures and ongoing deficiencies. This continued inability to meet licensing standards further demonstrates the agency's systemic misconduct, reinforcing Plaintiff's claims of procedural violations, retaliatory actions, and obstruction of reunification efforts. (Exhibit A)

## FACTUAL ALLEGATIONS

### POLICIES AND PRACTICES OF LAWRENCE COUNTY
### CHILDREN AND YOUTH SERVICES

**29)**    Defendant LCCYS maintains a policy and practice of directing caseworkers to remove children from homes during abuse investigations without reasonable grounds to believe the children face abuse or imminent serious harm, violating Plaintiff's constitutional rights under 42 U.S.C. § 1983.

**30)**    LCCYS has a policy and practice of placing attractive children with pre-adoptive foster families.

**31)**    LCCYS's policy and practice involves seizing children from their homes without due process, in violation of the Pennsylvania Child Protective Services Law, 23 Pa.C.S. § 6301, et seq., and the U.S. Constitution, to prevent parents from regaining custody.

**32)**    LCCYS imposes unattainable conditions on parents, ensuring that seized children, regardless of danger, cannot return to their natural parents.

**33)**    After separating children from parents, LCCYS prevents contact to hinder bonding with natural parents and promote bonding with pre-adoptive foster parents.

**34)**    LCCYS intervenes in custody proceedings, advocating for pre-adoptive foster parents over natural parents, regardless of evidence.

**35)**    LCCYS bypasses procedural requirements of the Pennsylvania Child Protective Services Law by:

**a)**  Holding required hearings off-record or not at all;

**b)**  Conducting 72-hour hearings off-record, sometimes excluding parents or not holding them;

**c)**  Appointing lawyers paid by LCCYS, loyal to LCCYS, not parents or children;

**d)**  Ensuring appointed lawyers advocate for LCCYS, not parents or children;

**e)** Discouraging parents from hiring independent counsel through court-appointed masters.

**36)** Due to these policies, LCCYS places a disproportionately high number of children in foster care compared to neighboring western Pennsylvania counties.

**37)** These policies make LCCYS the largest budget item in Lawrence County, surpassing other operations.

**38)** State and federal funding primarily supports these policies and practices.

## INITIAL CONTACT WITH LCCYS

**39)** On October 14, 2020, Defendant LCCYS, under Director John Bout, received a referral alleging Plaintiff neglected M.G.'s dental care, maintained an unsanitary home, and abused drugs.

**40)** On October 19, 2020, Caseworker Dylan Neal conducted an unannounced visit to Plaintiff's home finding no evidence of neglect or drug abuse. Despite this, LCCYS filed a dependency petition on January 29, 2021, alleging neglect contradicting the report Neal had sent to Child-line.

**41)** On December 11, 2020, LCCYS and Neal determined there was no neglect or drug abuse, the home had no safety concerns and the children had plenty of clothing and food.

## BASELESS PROCEEDINGS

**42)** On January 29, 2021, Defendants Nora DiBuono and Dylan Neal, under Director John Bout's oversight, filed a dependency petition alleging Plaintiff neglected M.G.'s dental care, despite Neal's October 19, 2020, report confirming no neglect, omitting findings of fact like medical records or witness statements. (Exhibit B)

**a)** This false petition caused Plaintiff emotional distress and violated Pa.R.J.C.P. 1145(a).

8

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as the baseless petition undermined a fair dependency proceeding.

**43)**    On February 17–19, 2021, LCCYS agent Alicia Izzo sent K.G., M.G., and A.G.'s medical records to Neal, DiBuono, and John Bongivengo, withholding them from Plaintiff to block her defense against the dependency petition, violating Pa.R.J.C.P. 1340 and 23 Pa. C.S. § 6340(a)(2). (Exhibit C)

**a)**    This obstruction hindered Plaintiff's ability to prepare for the dependency proceeding.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as the withholding of medical records denied her access to critical evidence.

**44)**    On February 22, 2021, Hearing Master Susan Papa conducted an unrecorded adjudication hearing, denying Plaintiff's request for a judge, ignoring her objections, barring Deal from testifying, and pressuring Plaintiff to admit neglect allegations. (Exhibit D)

**a)**    Papa engaged in ex parte communication with LCCYS, noting on the petition, "no box checked, called Susan Papa, checked 'reasonable efforts made' in order to proceed," violating 237 Pa. Code § 1127 and Pa. Code of Judicial Conduct, Rule 2.9.  This note was on the petition that was sent in an email from Defendant Elaine Peak.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Papa's biased and unrecorded hearing denied Plaintiff a fair opportunity to defend against the dependency petition.

**45)**    In April 2021, a DNA test revealed Louis Esposito was not the Plaintiff's biological father, prompting family conflicts and bogus calls to LCCYS from estranged family members.

a) These events exacerbated Plaintiff's challenges in the dependency proceedings.

46) On May 20, 2021, LCCYS received an unsubstantiated report alleging a methamphetamine lab at Plaintiff's home, which Defendant Heather Starr concealed from police, ambiguously noted as "too large to search" in a report filed nearly two months later, and alleging it's validity while stating K.G., M.G., and A.G. remained safe in the home, yet continued dependency proceedings. (Exhibit E)

a) This misconduct furthered a county policy prioritizing adoption and prolonged placements.

1) These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr's misleading report and continued proceedings undermined a fair dependency process.

47) On May 21, 2021, the LCCYS Intake Supervisor sent an email titled "Foster Home" regarding Plaintiff's children to Bill Blose B.A., evidencing an agreement to prioritize foster placement over kinship care showing a premeditated effort. (Exhibit C)

a) This email reflects a coordinated effort by LCCYS agents to obstruct Plaintiff's dependency case, exacerbating her dependency challenges.

1) These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as the Intake Supervisor and LCCYS agents conspired to favor foster placement, undermining a fair reunification process.

48) In 2021, LCCYS, led by John Bout, Dylan Neal, Heather Starr, and Nora DiBuono, failed to screen intake referral calls and thoroughly investigate reports, pursuing unfounded allegations against Plaintiff.

**a)**  This negligent intake process reflects a coordinated effort by LCCYS agents to prolong Plaintiff's dependency proceedings, causing emotional distress.

**1)**   These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Bout, Neal, Starr, and DiBuono conspired to advance baseless dependency actions through negligent intake practices.

**49)**   On June 24, 2021, during a dependency hearing, Defendants falsely claimed Plaintiff was connected to Louis Esposito's charges, despite his non-residence with her or her children. Defendant Heather Starr also mischaracterized Plaintiff's grief as a mental impairment, alleging she was "too depressed" to parent, despite no clinical diagnosis. (Exhibit F) Additionally, Starr falsely told the court "Home conditions remain unchanged" without specifics.  These claims contradicting a December 11, 2020, CY48 report (Exhibit G) stating the home had no safety concerns and the children had plenty of food and clothing. Defendants' reliance on perceived disability led to the unjust removal of her Plaintiff's children on July 22, 2021, violating 42 U.S.C. § 12132.

**a)**  Plaintiff's attempt to correct false claims was silenced by Hearing Master Susan Papa under threat of contempt, violating Pa.R.J.C.P. 1340 and 237 Pa. Code § 1187(A)(4).

**b)**  Starr's false allegations exacerbated Plaintiff's ADHD, Anxiety, and PTSD, causing emotional distress in violation of 42 U.S.C. § 12132.

**c)**  LCCYS agents exploited Plaintiff's economic status and role as a stay-at-home mother, obstructing her dependency defense amid high staff turnover, exemplified by the departure of CY48 report author Dylan Neal.

**1)**    These actions violated 42 U.S.C. § 1983, depriving Plaintiff of her Fourteenth Amendment due process rights, as Defendants conspired to undermine a fair hearing through false claims and suppression of testimony.

**50)**    On July 13, 2021, at a Commissioners' meeting, Morgan Boyd questioned LCCYS Director John Bout about high custody numbers and budget reliance on state and federal funding, and Bout defended avoiding screening intake referrals, stating a policy to "err on the side of caution" unlike other counties. (Exhibit H)

**a)**    This policy admission reflects a coordinated effort by LCCYS agents to pursue aggressive dependency actions against Plaintiff, exacerbating her dependency challenges.

**51)**    On July 14, 2021, Defendant Heather Starr, emboldened by LCCYS Director John Bout's policy to "err on the side of caution," entered Plaintiff's bathroom unannounced while Plaintiff showered and M.G. was nearby, ignoring privacy requests, to intimidate Plaintiff leading up to her children's removal.

**a)**    This unauthorized entry reflects a coordinated effort by LCCYS agents to pressure Plaintiff in dependency proceedings, causing emotional distress.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr conspired with LCCYS agents to intimidate Plaintiff, furthering baseless dependency proceedings.

**52)**    On July 15, 2021, Defendant Heather Starr filed a ChildLine CY48 report (Exhibit E) from a May 20, 2021, CY47, containing false statements and noting "No Services Planned or Provided," demonstrating bad faith, despite LCCYS claiming on **May 20, 2025**, via email that the CY48 did not exist.

**a)** This misleading report, furthering a county policy prioritizing prolonged placements, reflects a coordinated effort by LCCYS agents to prolong Plaintiff's dependency proceedings, causing emotional distress.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr conspired with LCCYS agents to obstruct a fair dependency process through a false CY48 report.

**LCCYS REMOVE'S PLAINTIFF'S CHILDREN WITHOUT LEGAL AUTHORIZATION**

**53)** From July 19–22, 2021, Defendants Heather Starr and Susan Papa engaged in procedural misconduct, facilitating the wrongful removal of Plaintiff's children, K.G., M.G., and A.G., reflecting Papa's conflict of interest as an adoption law firm operator.

**a)** This misconduct reflects a coordinated effort by LCCYS agents to obstruct Plaintiff's reunification, causing emotional distress.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr and Papa conspired to wrongfully remove her children without proper procedures.

**54)** On July 19, 2021, Plaintiff received a court order weeks late from the June 2021 permanency review hearing in an LCCYS envelope, mandating a hair follicle drug test with no location specified, arriving just before the July 22, 2021, hearing, and Defendant Heather Starr replied to Plaintiff's inquiry, "You could give the hair of a dog and we're still taking your kids," refusing guidance.

**a)** Starr rejected Plaintiff's negative Med Express drug screen and professional assessment confirming no treatment was necessary, falsely alleging non-compliance, causing significant emotional distress and reputational harm, violating Pa.R.J.C.P. 1340(B)(1)(e).

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr conspired with LCCYS agents to misrepresent Plaintiff's compliance, justifying wrongful child removal.

**55)** On July 22, 2021, Defendant Susan Papa conducted an unrecorded hearing, excluded Plaintiff's private attorney by declining his Zoom appearance, stated, "The worst thing you could have done was to hire private counsel. Our Attorneys are good enough, and go tell all of your friends," and failed to inform Plaintiff of her right to a judge, while Defendant John Bongivengo, as Plaintiff's conflicted counsel, said, "We know what's going on here, so let's just get on with it," suggesting ex parte collusion, and court records misrepresented Plaintiff's counsel despite his motion. (Exhibit L)

**a)** This misconduct, causing emotional distress and prolonged separation, violated Pa.R.J.C.P. 1127(A) by failing to record the proceeding and Pa.R.J.C.P. 1151(E) by denying Plaintiff's right to counsel and judicial oversight.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Papa and Bongivengo conspired to deny Plaintiff a fair hearing through exclusion and collusion.

**56)** On July 22, 2021, at approximately 7:00p.m., Defendant Heather Starr, acting under the policy set by Director John Bout and accompanied by police officers who remained outside, entered the Plaintiff's home to remove her children based on the recommendation of Defendant Susan Papa in an unrecorded hearing.

**a)** This removal, causing emotional distress, violated Pa.R.J.C.P. 1210(A) and 23 Pa.C.S. § 6315(a) by lacking a court order or exigent circumstances.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr, Bout, and Papa conspired to remove Plaintiff's children without legal authorization.

**57)**    Defendant Papa's operation of a law firm focusing on adoptions during Deal's hearings constituted a private business interest, not a judicial act.

**a)**  This conflict, causing emotional distress and prolonged separation, violated Pa.R.J.C.P. 1128(A) by undermining Plaintiff's right to a fair hearing.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Papa conspired with LCCYS agents to bias dependency proceedings for adoption outcomes

**58)**    From July 22 to August 2, 2021, Defendants LCCYS and Heather Starr failed to disclose the location of Plaintiff's children, K.G., M.G., and A.G., after their July 22, 2021, removal, denying Plaintiff access, communication, or explanation regarding her children for over ten days.

**a)**  This misconduct, worsening Plaintiff's diagnosed acute anxiety disorder and causing severe emotional distress to Plaintiff and her children, violated Pa.R.J.C.P. 1608 by failing to review and share the family service plan and 23 Pa.C.S. § 6373(a)(5) by prioritizing foster care over kinship placement.

**b)**  Defendants LCCYS, DiBuono, and Starr falsely claimed compliance with family finding in the June 24, 2021, and July 22, 2021, permanency review orders.

**c)**  Upon removal, the children were placed in foster care for 10 days before being moved to kinship care with Plaintiff's half-brothers—K.G. and M.G. with one, A.G. with another—resulting in misplacement and exacerbated separation anxiety for Plaintiff and her children.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Starr, and Nora DiBuono conspired to withhold information and delay kinship placement, prolonging familial separation.

**59)**    LCCYS delayed Plaintiff's first post-removal hearing until December 2, 2021, 134 days after the July 22, 2021, removal.

**a)**  This delay, exacerbating Plaintiff's emotional distress and prolonging separation from her children, violated Pa.R.J.C.P. 1510 by failing to hold a dispositional hearing within 20 days and 23 Pa.C.S. § 6351(e)(3) by neglecting timely permanency review.

**b)**  This delay was part of a pattern of procedural misconduct, evidenced by the state court's November 9, 2023, dismissal (Exhibit J) of Defendants' baseless termination petition.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to delay judicial review of the wrongful removal, obstructing reunification.

**60)**    On August 18, 2021, Defendant Starr, ignoring the CPSL, mandated supervised visitation for Plaintiff with K.G., M.G., and A.G., citing unverified mental health concerns, straining their familial bond.

**a)**  This intentional procedural misconduct, causing profound emotional distress to the Plaintiff and loss of familial bond, violated Pa.R.J.C.P. 1515(C) by imposing unauthorized visitation restrictions without court order and 23 Pa.C.S. § 6375(c) by delaying the family service plan seven months after dependency adjudication.

**b)**  August 18, 2021, Defendant LCCYS failed to issue a timely family service plan, instead providing an intrusive plan that required the Plaintiff to sign over all medical records, undergo evaluation by the agency's chosen doctor, complete a psychological examination, and take

prescribed medication from LCCYS's designated physician. This plan—labeled "#01"—was presented seven months after the Plaintiff's children were adjudicated dependent and subsequently removed. It directly contradicted prior court orders stating noncompliance with a service plan February 11, 2021.

    **c)**  The plan lacked objectives or appeal instructions with Starr's comments in the plan noting Plaintiff's objection to the CPP, her retention of private counsel, and the desire for a rehearing, undermining Plaintiff's compliance, reflecting LCCYS's adoption-driven policy.

    **d)**  This intentional procedural misconduct caused emotional distress, violating Pa.R.J.C.P. 1515(C) and 23 Pa.C.S. § 6375(c), and the 2023 dismissal evidences bad faith.

    **e)**  These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr and LCCYS conspired to impose restrictive conditions and delay services, prioritizing prolonged placements over reunification.

    **61)**  On August 20, 2021, Plaintiff's counsel, Almon Burke, filed a motion for rehearing to challenge the July 22, 2021, removal, which Judge Acker denied without reasons.

    **a)**  This misconduct, causing emotional distress and prolonged familial separation, violated Pa.R.J.C.P. 1150(A) by misrepresenting Plaintiff's counsel in court records, Pa.R.J.C.P. 1243(D) by denying the rehearing without reasons, and 23 Pa.C.S. § 6336(a) by failing to record the July 22, 2021, hearing, tainting the rehearing process.

    **b)**  Plaintiff's counsel had told her that he had never seen anything like this before, was never heard from again despite multiple attempts, and Plaintiff paid $2,500 for an attorney who was never allowed to appear on her behalf.

    **c)**  A docket entry on 12/08/2021 stated "Attorney Almon Burke, Jr., is the Attorney of the Mother. Atty Susan Papa confirmed that, however, Atty Burke never entered his appearance on this

case. I did exit this Order (by fax) as a courtesy," leaving Plaintiff without counsel until March

2023, yet unable to act in the courts because "she had an attorney of record". (Exhibit I)

**d)** Defendant Papa's prior failure to record the July 22, 2021, hearing, and Defendant

Starr's falsifications, willfully tainted the rehearing process, preventing Plaintiff's appeal and

constituting willful misconduct.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth

Amendment due process rights under color of state law, as Papa, Starr, and LCCYS conspired to

obstruct Plaintiff's access to counsel and a fair rehearing, preventing appeal.

**62)** On August 26, 2021, Defendants Cray and Tanya Montgomery, acting for

LCCYS, enforced a policy that banned case discussion during supervised visits at Cray's facility.

**a)** This policy, causing severe emotional distress and interfering with Plaintiff's

custodial rights, violated Pa.R.J.C.P. 1515(C) by imposing unauthorized communication

restrictions without court order and 23 Pa.C.S. § 6373(a)(5) by obstructing familial reunification.

**b)** This policy blocked the mother's ability to speak with her children about the tragedy

they just experienced and threatened cancellation, obstructing familial bonds.

**c)** Cray's policy, under LCCYS's oversight, reflects a pattern of obstructing

reunification.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth

Amendment due process rights under color of state law, as Cray, Montgomery, and LCCYS

conspired to restrict Plaintiff's communication with K.G., M.G., and A.G., advancing an

adoption-driven agenda.

**63)** On June 2, 2022, Defendant Papa deliberately violated due process by requiring

an additional hair follicle drug screen based on Defendant Starr's false allegations of substance

abuse, despite Plaintiff's multiple no treatment recommendations from Lawrence County Drug and Alcohol.

    **a)**  This misconduct, obstructing Plaintiff's reunification with K.G., M.G., and A.G., violated Pa.R.J.C.P. 1145(B) by ordering an unwarranted examination without evidence and 23 Pa.C.S. § 6368(d) by basing the order on Starr's recommendation lacking credible evidence.

    **b)**  Defendant Starr, without evidence at all, absent of harm or neglect, having no charges been pressed on the mother, (Exhibit K) communicated this recommendation to the court, and with Plaintiff's children in the custody of the agency, Starr was eager to give her the location to take the hair follicle test.

    **c)**  These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Papa and Starr conspired to impose baseless testing to delay reunification.

    **64)**  On June 3, 2022, Plaintiff went to UPMC Outpatient Center to submit to the requested hair follicle test despite her hesitancy to the fact that Starr previously stated to the Plaintiff that it didn't matter if she was not using drugs, she would make sure the test came back positive.

    **a)**  The results of this test leave her visitation with her children hanging in the balance as it was stated by Starr and Papa.

    **b)**  Starr reported a positive test to the court, deliberately withholding results from the Plaintiff despite her MANY requests to see the results.

    **c)**  This further misrepresented Plaintiff's compliance to restrict visitation.

    **d)**  Shortly after this Defendant Starr no longer worked for the Agency.

**e)** These actions, prolonging familial separation, caused emotional distress and reputational harm, violating Pa.R.J.C.P. 1406(C) by denying Plaintiff's right to present evidence and 23 Pa.C.S. § 6368(d) by lacking credible evidence.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Starr and Papa conspired to misrepresent Plaintiff's compliance, restricting visitation.

**65)** On January 12, 2023, without receiving any notice, Lawrence County posted Plaintiff's photo online for a child support warrant sending the sheriff to pick her up and bring her in.

**a)** The Plaintiff paid the child support and went home.

**1)** The interesting part about this interaction with the Sheriff Department is that in Feb 2025, the Plaintiff found out she had a warrant for unpaid traffic tickets since 2014 that was allegedly active during this time...  One would think this would be a good time to bring this up.  It was never mentioned to the Plaintiff.

**66)** Just over a week later, On January 20, 2023, LCCYS, Windhorst, and DiBuono filed a termination petition

**a)** The petition we now know was submitted with false affidavits, lacking allegations, all to sever Plaintiff's rights.

**b)** This action advanced a county policy prioritizing adoption and prolonged placements, violating Pa.R.J.C.P. 1701(B) by using improper affidavits and 23 Pa.C.S. § 2513(b) by filing a baseless petition.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Windhorst, and DiBuono conspired to file a false termination petition, obstructing reunification.

**67)**    Defendants Peak, Windhorst, and others willfully misrepresented Plaintiff's non-compliance with mental health services.

**a)**    Despite the mother knowing she had a right to privacy, under threats of never seeing her children again by Peak and Windhorst, Plaintiff signed over her medical records confirming stability.

**1)**    This false portrayal was used to prolong familial separation, causing emotional distress and violating Pa.R.J.C.P. 1406(C) by denying Plaintiff's right to present evidence and 23 Pa.C.S. § 6368(d) by lacking credible evidence.

**68)**    In an irrational and bizarre manner, Defendants Windhorst and Peak persistently fixated on the Plaintiff's mental health, unlawfully insisting on an evaluation by their chosen doctor without obtaining a court order. They falsely assured increased visitation, despite the Plaintiff's full compliance in providing her health records.

**a)**    Nearly every court order since removal mentioned her mental stability referenced by the agency, yet they refused to petition the court for an evaluation even AFTER receiving her signed over health records.

**b)**    Defendants continued to misrepresent her status of compliance and no matter what hoops she jumped through there were always new ones to take their place consistently promising her visitation and reunification if she complied.

**c)**  Plaintiff believes and therefore avers, that the Defendants hard push towards their doctor was an attempted collusive effort to get a false diagnosis from a "bias" doctor.  This mirrors the 2025 therapist recommendations from an ex LCCYS employee.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Windhorst and Peak conspired to impose unwarranted demands, obstructing reunification.

**69)**    In further retaliation, despite Plaintiff meeting all agency demands, Defendants refused to mark services as "completed" in a January 2023 service plan, deliberately prolonging the placement of her children and delaying reunification.

**a)**  This misconduct violated Pa.R.J.C.P. 1608 by failing to accurately review the family service plan and 23 Pa.C.S. § 6375(c) by obstructing timely reunification efforts.

**b)**  These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to misrepresent Plaintiff's compliance, delaying reunification.

**70)**    On March 9, 2023, LCCYS appointed Paula Cialella as Plaintiff's counsel, selecting her to weaken Plaintiff's defense, violating Pa.R.J.C.P. 1151(E) by appointing ineffective counsel and 23 Pa.C.S. § 6337 by undermining Plaintiff's right to counsel.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to appoint counsel to weaken Plaintiff's defense, obstructing reunification.

**71)**    On March 20, 2023, the Plaintiff's ex husband and children's father, was arrested outside of Cray visitation center during one of the visits for having a warrant for an incident that happened post removal.

**a)** Under the directive of Defendants Windhorst and Montgomery, one of the children called and reported him to the police for having the warrant.

**b)** This was revealed to the Plaintiff by the daughter during a 2025 family therapy session the Defendant Burrows was present for.

**c)** This ritualistic pattern of behavior further strained the bond between the mother and her children advancing Lawrence County's policy prioritizing adoption and prolonged placements over reunification, violating Pa.R.J.C.P. 1515(C) by imposing unauthorized actions and 23 Pa.C.S. § 6373(a)(5) by obstructing reunification.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Windhorst and Montgomery conspired to manipulate and coerce Plaintiff's child, straining familial bonds.

**72)** In March of 2023, LCCYS motioned to modify placement of the children from kinship care to the foster home.

**a)** According to the one kinship care provider, LCCYS misrepresented the placement as temporary and assured one half-brother of ongoing contact.

**b)** Within a few weeks the phone calls stopped and the foster parents Defendants Minnitte and Alsdorf started refusing phone calls.

**1)** This misconduct, causing emotional distress, violated Pa.R.J.C.P. 1608(E) by misrepresenting placement in the family service plan and 23 Pa.C.S. § 6373(a)(5) by obstructing reunification through false court representations by DiBuono, and DiBuono's false court representations violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Minnitte, Alsdorf, and DiBuono conspired to restrict familial contact.

**73)**    On April 13, 2023, Cialella withdrew as Plaintiff's counsel, falsely claiming Plaintiff requested a continuance, delaying proceedings.

**a)**  This misconduct violated Pa.R.J.C.P. 1150(C) by falsely withdrawing as counsel and 23 Pa.C.S. § 6337 by undermining Plaintiff's right to effective counsel, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Cialella and LCCYS conspired to delay proceedings.

**74)**    On April 14, 2023, DiBuono, Windhorst, Minnitte, Alsdorf, and The Bair Foundation coordinated the vaccination of Plaintiff's children.

**a)**  Without her prior knowledge or consent while unrepresented, Nora DiBuono filed a motion to vaccinate her children overriding her parental rights.

**b)**  Judge Acker GRANTED the motion.

**1)**    This misconduct violated Pa.R.J.C.P. 1151(E) by proceeding without Plaintiff's counsel and 23 Pa.C.S. § 6357 by overriding parental medical decision rights, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as DiBuono, Windhorst, Minnitte, Alsdorf, and LCCYS conspired to override Plaintiff's parental rights.

**75)**    On May 26, 2023, LCCYS through Defendant DiBuono again, petitioned the court to appoint Dennis McCurdy by name as counsel for the Plaintiff.

**a)**  This gave further control to the agency as McCurdy's loyalty is to LCCYS

**1)**    This misconduct violated Pa.R.J.C.P. 1151(E) by appointing biased counsel and 23 Pa.C.S. § 6337 by undermining Plaintiff's right to effective counsel, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as DiBuono and McCurdy conspired to control Plaintiff's defense.

**76)**    On June 1, 2023, the children's attorney filed for a continuance.

**a)**  This further delayed the termination proceedings.

**1)**    This misconduct violated Pa.R.J.C.P. 1122(A) by granting an unjustified continuance and 23 Pa.C.S. § 6341(c) by delaying timely proceedings, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to delay termination proceedings.

**77)**    On June 1, 2023, Plaintiff received her Child Abuse History Certification that confirmed no record of Plaintiff being a perpetrator of child abuse or neglect. (Exhibit K)

**a)**  This contradicted LCCYS's neglect allegations used to justify dependency and continued placement.

**1)**    This misconduct violated Pa.R.J.C.P. 1408 by relying on false allegations and 23 Pa.C.S. § 6340(a)(10) by ignoring certification evidence, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to justify dependency with false allegations.

**78)**    Before the July 31, 2023 hearing, Defendant Windhorst scheduled a home visit for the first time ever since the children's removal for July 24, 2023 at 10am.

**a)**  Plaintiff waited all day that Monday, eventually being told that they were not coming.

**1)**    This violated Pa.R.J.C.P. 1608(E) by failing to comply with the family service plan and 23 Pa.C.S. § 6375(c) by obstructing reunification efforts, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Windhorst and LCCYS conspired to delay reunification.

**79)**    On **July 31, 2023**, Papa held another allegedly unrecorded permanency review hearing.

**a)** In this order of court under PROGRESS – Towards alleviating the circumstances which necessitated the original placement, its stated as follows:

> MOTHER- There has been minimal progress toward alleviating the circumstances which necessitated the original placement, in that though Mother has completed key services, her progress is difficult to measure in that her living circumstances cannot be confirmed.

**b)** The order noted Plaintiff's compliance with return to parent as the goal, but allowed LCCYS to allege baseless aggravated circumstances, to extend separation, advancing Lawrence County's policy prioritizing adoption and prolonged placements over reunification.

**1)** This misconduct violated Pa.R.J.C.P. 1127(A) by failing to record the hearing and 23 Pa.C.S. § 6351(f) by misrepresenting progress, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Papa and LCCYS conspired to obstruct reunification.

**80)** On September 6, 2023, LCCYS filed another continuance of the ITPR hearing, further delaying proceedings.

**1)** This misconduct violated Pa.R.J.C.P. 1122(A) by granting an unjustified continuance and 23 Pa.C.S. § 6341(c) by delaying timely proceedings, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to delay reunification.

**81)** On November 9, 2023, Judge Acker **DISMISSED** the ITPR petition as a matter of law.

**a)** This is the first failed termination of rights and adoption attempt since 2014 in Lawrence County.

**b)** On November 9, 2023, LCCYS, John Bongivengo, Nora DiBuono, and Dennis McCurdy withheld notice of a permanency petition filed shortly after the dismissal of LCCYS's baseless termination petition, obstructing Plaintiff's defense

**1)** This advanced Lawrence County's adoption-focused prolonged placement policy over reunification, shown by low reunification rates and prolonged placements, violating Pa.R.J.C.P. 1601 by withholding notice and 23 Pa.C.S. § 6351(e) by obstructing timely permanency, and violating 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Bongivengo, DiBuono, and McCurdy conspired to obstruct Plaintiff's defense, causing emotional harm and family loss.

**82)** Post ITPR dismissal, Defendant Minnitte falsely alleged Plaintiff harassed her own children to a former caseworker.

**a)** This caseworker accidentally texted the Plaintiff revealing the plan that she would secretly be on the next phone call when the mother called the children.

**b)** This lie was to retaliate for Plaintiff's refusal to surrender HER parental rights to the foster parents.

**1)** This misconduct violated Pa.R.J.C.P. 1406(C) by using false allegations and 23 Pa.C.S. § 6368(d) by lacking credible evidence, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Minnitte and LCCYS conspired to retaliate, obstructing reunification.

**83)** On January 14, 2024, LCCYS falsely told Dr. Terry O'Hara that Plaintiff was arrested for drugs in 2023 which he verified to be untrue.

**a)** This defamatory statement nearly sabotaged her psychological evaluation casting Plaintiff in an unfavorable light prior to the bonding assessment was reckless and intentional to

advance Lawrence County's policy prioritizing adoption and prolonged placements over reunification.

**1)** This misconduct violated Pa.R.J.C.P. 1406(C) by using false statements and 23 Pa.C.S. § 6368(d) by lacking credible evidence, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to defame Plaintiff, obstructing reunification.

**84)** Immediately following the dismissal, scheduled visits abruptly started being canceled.

**a)** It was propagated to the Plaintiff that K.G., M.G., **AND** A.G. allegedly refused continued contact with the Plaintiff.

**b)** LCCYS, Elaine Peak, Minnitte, and Alsdorf blocked nearly all visits and calls through January 2025.

**1)** This act furthered the deprivation of her children, causing distress, violating Pa.R.J.C.P. 1515(C) by imposing unauthorized restrictions and 23 Pa.C.S. § 6373(a)(5) by obstructing reunification, and violating 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Peak, Minnitte, and Alsdorf conspired to block familial contact.

**85)** On March 14, 2024, Judge Acker issued an order aimed at reunification. However, LCCYS, Peak, Minnitte, Alsdorf, Burrows, and The Bair Foundation defied the court's directive for therapeutic visits until January 29, 2025, offering various justifications.

**a)** Initially, it was claimed therapy had been scheduled. When Plaintiff pressed Defendant Peak for answers, she was told that no provider was available—only for it later to be stated that therapy would begin soon. Subsequently, Peak asserted that the children required individualized

"trauma" counseling. At one point, the foster parents' work schedules were even cited as the reason for the delay. Each time Plaintiff inquired why therapy had not commenced, she was met with another arbitrary excuse.

**b)** During the same hearing, following threats of permanent custody loss conveyed through her attorney, the Plaintiff was informed that Judge Acker would revoke her parental rights regardless of compliance. Despite repeatedly raising concerns over John Bongivengo's conflict—given his roles as her father's attorney, her former attorney, and the current LCCYS solicitor—a waiver of this conflict was coerced verbally on the record.

**1)** The Plaintiff's statements in open court were minimal, but this issue was clearly established after the first dismissal of a termination petition in Lawrence County since 2014.

**2)** These actions violated Pa.R.J.C.P. 1609(D) by defying the court's reunification order and 23 Pa.C.S. § 6351(f) by obstructing permanency goals, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Peak, Minnitte, Alsdorf, Burrows, and Bongivengo conspired to delay reunification and coerce a conflict waiver.

**86)** On June 25, 2024, Plaintiff filed an ADA complaint against LCCYS for discriminating against her for perceiving her as being inadequately able to parent due to having a disability and using that perception to take her children, prompting Lawrence County, LCCYS, Bout, Demonaco, Peak, and Heaney to intensify retaliation with fines, rejected filings, and record obstructions;

**a)** The matter was closed without resolution on March 27, 2025

**1)** This misconduct violated Pa.R.J.C.P. 1406(D) by engaging in retaliatory actions and 23 Pa.C.S. § 6341(c) by undermining fair proceedings, and violated 42 U.S.C. § 1983 by

depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Bout, Demonaco, Peak, and Heaney conspired to retaliate for Plaintiff's ADA complaint.

**87)**    On July 1–2, 2024, Plaintiff paid $53.75 for transcripts after the Records office and McCurdy, denied in forma pauperis requests.

**a)** Plaintiff's husband was with her for the first time, soliciting a different response, indicating class and sex-based obstruction.

**1)**    This misconduct violated Pa.R.J.C.P. 1127(C) by obstructing transcript access and 23 Pa.C.S. § 6340(a)(10) by denying record access, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS and McCurdy conspired to obstruct Plaintiff's access to records.

**88)**    The transcripts revealed omissions (e.g., March 14, 2024, attorney outburst for father refusing SPLC labeled "off the record")

**1)**    This misconduct violated Pa.R.J.C.P. 1127(A) by failing to fully record proceedings and 23 Pa.C.S. § 6336(a) by omitting critical records, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to obstruct Plaintiff's access to accurate records.

**89)**    On July 8, 2024, Plaintiff Margaret Deal attempted to file a counsel withdrawal motion due to her attorney's unresponsiveness, followed by a Pro Se motion, at the Lawrence County Prothonotary office.

**a)** Informing clerk Deanna Demonaco of her counsel's ineffectiveness. Demonaco rejected both filings saying its 'the law'. When pressed with the specifics of 'the law', Demonaco resorted to saying 'I don't know, I can't take anything from ***YOU!***', revealing the true reason for her denial.

**1)**     This misconduct violated Pa.R.J.C.P. 1345(A)(2)–(3) by improperly rejecting filings and 23 Pa.C.S. § 6341(c) by undermining fair proceedings, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Demonaco and LCCYS conspired to obstruct Plaintiff's filings.

**90)**     July 2024, Plaintiff seeking her visitation records, Montgomery claimed lost visitation summaries due to "computer error," to obscure compliance post-ADA complaint made by the Plaintiff.

**a)**   Montgomery attended Plaintiff's hearings, even after visits moved and her case was closed with Cray, but one month's summaries vanished from Cray and Montgomery's records, coinciding with Plaintiff's ejection for answering her children's queries.

**b)**   Montgomery told Dr. O'Hara that the Plaintiff was not honest with her children in regard to telling them why their father was in jail, yet concurrently held a policy of barring the parents ability to discuss personal matters.  As it turns out, she was part of it.

**1)**     This misconduct violated Pa.R.J.C.P. 1166(A) by failing to maintain records and 23 Pa.C.S. § 6340(a)(10) by denying record access, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Montgomery and LCCYS conspired to obscure compliance and make false statements.

**91)**     On August 22, 2024, Plaintiff had her first meaningful community visit with her youngest daughter A.G. where she took her to the Crawford County Fair <u>alone.</u>

**a)**   That same day, "The City of New Castle" imposed a $5,482.50 lien and $1,281.50 falsified back "owed" taxes contradicting her Social Security Statements. (Exhibit N)

**b)**   These were sent to wrong addresses clear back to 2005, but somehow omitting the property she lived at for over 10 years in retaliation for her advocacy.

**1)**    This action violated 42 U.S.C. § 1983 retaliation.

**92)**    On August 28, 2024, LCCYS, Peak, and Bongivengo withheld prior parental capacity assessments that had noted the foster parent's influence and a Psychological Doctors Recommendation that was positive for the Plaintiff's reunification attempting to block it despite Judge Acker's order.

**1)**    This misconduct violated Pa.R.J.C.P. 1340(B)(1)(e) by withholding evidence and 23 Pa.C.S. § 6340(a)(10) by denying record access, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Peak, and Bongivengo conspired to obstruct reunification.

**93)**    In the final recommendations section, in one of TWO of these buried 28 page assessments paid for with tax payer dollars, it states:

> "Ultimately, in this examiner's opinion, it would be in the children's best psychological interest to be able to have liberal and unsupervised contact with their biological parents and for Ms. Deal and Mr. G***** to be able to provide support, encouragement, and nurturance to the children."

**a)**    This misconduct violated Pa.R.J.C.P. 1340(B)(1)(e) by withholding favorable evidence and 23 Pa.C.S. § 6340(a)(10) by denying record access, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS conspired to obstruct reunification

**94)**    Plaintiff asserts that the opaque policy—denying Pro Se filings despite attorney failures—reflects systemic barriers by Defendants LCCYS, Demonaco, and Medure, which were applied in a discriminatory manner based on Plaintiff's sex.

**a)**    Defendants' actions, including their refusal to respond to Plaintiff's direct inquiries (e.g., no response to Plaintiff's December 31, 2024, email) while engaging with her husband,

Daniel Deal Sr., who is male, demonstrate disparate treatment based on sex. For example, Medure promptly responded to Deal's forwarded email on December 27, 2024, and called Deal on January 2, 2025, but ignored Plaintiff's email, suggesting Defendants prioritized male intermediaries over the female Plaintiff.

    **b)** Plaintiff further alleges that Defendants' policy and conduct reflect a pattern of sex-based discrimination, as evidenced by their dismissive and resistant responses to her inquiries (e.g., Demonaco's admission of not knowing specifics) compared to their engagement with male non-parties, intentionally or recklessly denying Plaintiff equal protection and access to justice.

    **c)** This disparate treatment obstructed Plaintiff's access to vital dockets, hindering her defense against LCCYS's claims.

    **1)** This misconduct violated Pa.R.J.C.P. 1345(A)(2)–(3) by denying filing access and 23 Pa.C.S. § 6341(c) by undermining fair proceedings, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS, Demonaco, and Medure conspired to discriminate based on sex, obstructing Plaintiff's defense.

    **95)** On January 1, 2025, Peak texted Plaintiff to cancel a New Year's visit with A.G. Subsequently, Peak mistakenly sent a message intended for Minnitte and Alsdorf to the Plaintiff defaming her as "horrible" and pushing SPLC despite Judge Acker's reunification order, stating, 'I will still help you, God wills they do SPLC, they are horrible.'

    **1)** This misconduct violated Pa.R.J.C.P. 1609(D) by defying the reunification order and 23 Pa.C.S. § 6351(f) by obstructing permanency goals, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Peak, Minnitte, and Alsdorf conspired to defame Plaintiff and block visitation.

**96)**    On January 14, 2025, a permanency review hearing was held.  During this hearing it was stated as follows: (Exhibit M)

**1)**    Plaintiff had made FULL PROGRESS towards alleviating the circumstances which necessitated the original placement.

**2)**    The Agency has not satisfied the requirements of Pa. R.J. C. P.1149 regarding family finding.

**3)**    Reasonable efforts have NOT been made by the Lawrence County Office of Children and Youth ('Agency') to finalize this child's permanency plan.

**4)**    The child's family has **not** been provided with necessary services to achieve the safe return of the child to the family within the timeframes set forth in the permanency plan. Specifically, this Court had previously issued an Order of Court directing Lawrence County Children and Youth Services to arrange for family-based therapy to commence, which has not taken place to date.

**b)**  During this hearing, Defendant Peak stated under oath that Plaintiff failed a drug test in 2021 and refused to submit to a drug and alcohol assessment.

**c)**  These statements were false, as Plaintiff obtained six drug and alcohol assessments between July 20, 2021, and March 18, 2025, all recommending no treatment, which were available to Defendants.

**d)**  Peak continued to falsely claim Plaintiff's non-compliance with mental health evaluations, despite court-confirmed compliance, to prolong separation

**e)**  Peak's false testimony was made with intent to mislead the court, prejudicing Plaintiff's rights in the hearing and causing harm to her reputation and legal interests.

34

**1)**     This misconduct violated Pa.R.J.C.P. 1406(C) by denying Plaintiff's right to present evidence and 23 Pa.C.S. § 6368(d) by lacking credible evidence, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Peak and LCCYS conspired to mislead the court, prolonging separation.

**97)**     On January 22, 2025, Defendant Marissa Heaney falsely stated in a service plan that Plaintiff did not submit a June 2022 hair follicle drug test until 2024, despite Plaintiff submitting to the test in 2022, as documented in emails from LCCYS.

**a)**  Plaintiff notified Heaney of the correct submission date through multiple communications, including emails, but Heaney has refused to correct the false statement, which prejudiced Plaintiff's compliance with permanency plan requirements. During a meeting to review the service plan, Heaney stated, "Most people give up by now," suggesting an intent to obstruct Plaintiff's efforts to exercise her parental rights.

**b)**  Plaintiff alleges that Heaney's actions were influenced by a conflict of interest, as Heaney holds a private contract with Lawrence County for $22,672.26 over two years, approved by county commissioners on August 29, 2024, while simultaneously controlling Plaintiff's permanency plans. This conflict contributed to Heaney's falsifications, causing courts to disregard Plaintiff's documented compliance.

**1)**     This misconduct violated Pa.R.J.C.P. 1608(E) by including false statements in the service plan and 23 Pa.C.S. § 6375(c) by obstructing timely reunification, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Heaney and LCCYS conspired to misrepresent Plaintiff's compliance.

**98)**     On January 29, 2025, Defendant Burrows admitted coaching K.G. and M.G. to write rejection letters to the Plaintiff during therapy, dismissing the therapies legitimacy as a "pre-adoption formality".

**a)**  LCCYS appointed a biased ex-employee who worked for LCCYS from "Apr 2014 – Sep 2023" as the therapist advancing Lawrence County's policy that prioritizes adoption over reunification.  This is according to her Linkdin account profile.

**1)**     This misconduct violated Pa.R.J.C.P. 1515(C) by imposing unauthorized actions and 23 Pa.C.S. § 6373(a)(5) by obstructing reunification, and violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Burrows and LCCYS conspired to bias therapy, advancing adoption.

**99)**     On February 26, 2025, Lawrence County officials caused Plaintiff to receive a driving citation near her home, issued 30 minutes after she submitted a Right-to-Know Law (RTKL) request to an Assistant District Attorney serving as the RTKL officer.

**a)**  The RTKL request sought minutes from a 2018 Lawrence County Commissioners meeting referenced in a New Castle News article, which described Commissioners threatening public commenters for questioning their authority, including comments about LCCYS operations.

**b)**  The meeting minutes provided in response omitted public comments, contradicting the article's account and suggesting an effort to conceal the Commissioners' suppression of free speech.

**c)**  The meetings received showed no public comments confirming the authors assertions.

**1)**     These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her First Amendment rights under color of state law, as the citation was issued in retaliation for her RTKL

request, part of a pattern of chilling protected speech critical of county officials, including inquiries into LCCYS.

## ONGOING HARM

**100)**    Since 2021, LCCYS willfully withheld Plaintiff's ChildLine CY48 reports (October 2020, May 2021), despite near-monthly requests, including attorney demands on September 12, 2023, February 7, 2025, February 11, 2025, March 6, 2025, and March 20, 2025.

**a)**  On April 16, 2025, caseworker Valerie Buckland acknowledged their existence but delayed; on April 28, 2025, LCCYS's counsel falsely claimed the requests were improper discovery requests, obstructing Plaintiff's dependency case preparation.

**b)**  This bad-faith contradiction caused emotional distress.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS's withholding of CY48 reports denied her evidence critical for dependency proceedings violating 23 Pa.C.S. § 6339 and 55 Pa. Code § 3490.104.

**101)**    From 2021 to 2025, LCCYS's obstructive pattern, including CY48 withholding, reflects bad faith consistent with the November 9, 2023, dismissal of their baseless termination petition.

**a)**  On April 29, 2025, LCCYS requested an expedited permanency hearing, moving from July to June without agenda notice, hindering Plaintiff's preparation and furthering their adoption-driven policy.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as the expedited hearing without notice impaired her ability to prepare for the dependency case.

**102)**    On May 2, 2025, LCCYS caseworker Valerie Buckland canceled two weekly family therapy sessions vital for reunification, rescheduling for a May 5, 2025, phone call she later canceled without cause, part of LCCYS's pattern of obstructing visitation.

**a)**  This bad-faith act caused severe emotional harm.

**1)**    These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as the cancellations obstructed her court-ordered reunification efforts.

**103)**    On May 22, 2025, at approximately 10:35 p.m., Plaintiff emailed all relevant attorneys in the state dependency and federal cases, asserting her wishes for the expedited permanency hearing, despite LCCYS's bad-faith tactics.

**a)**  This effort countered LCCYS's obstructive pattern, causing emotional distress and hindering reunification.

**1)**    LCCYS's actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as their obstructive tactics hindered her ability to participate meaningfully in dependency proceedings.

**104)**    On May 23, 2025, around 3:00 p.m., Plaintiff received an email from LCCYS caseworker Valerie Buckland stating that the previously requested CY48 was "ready for pickup," but the paperwork provided was missing the May 2021 report, despite Plaintiff's specific request for October 2020 and May 2021 reports.

**a)**  Plaintiff emailed Buckland stating the May 2021 report was missing; Buckland replied,

> "The CY48 that was given to you is the only CY48 in our system.
> Are you wanting the CY48 that reflects the removal of the children?
> There is not a CY48 for that, as that is technically still an open case.
> VB"

**b)** This false claim and incomplete CY48 reflect a four-year pattern of bad-faith withholding, obstructing Plaintiff's dependency case preparation.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS's false claim and incomplete CY48 production denied her evidence vital for dependency proceedings.

## SYSTEMIC OBSTRUCTIONIST POLICIES

**105)** The Lawrence County Prothonotary delegates its duty of serving court documents in dependency cases to LCCYS, allowing LCCYS to act as both petitioner and server, violating Pa.R.C.P. 236(a–b) and 237 Pa. Code § 1167(B)(3). Lawrence County further obstructs due process through a court policy ensuring near-uncontested involuntary termination of parental rights (ITPR) petitions, achieving a 99.73% success rate (369 granted, 1 denied) from 2014–2023, compared to an average 97.52% success rate (2,480 granted, 58 denied) across six other 5th class counties, (Adams: 95.24%, Blair: 98.54%, Lebanon: 98.67%, Lycoming: 97.50%, Mercer: 97.40%, Northumberland: 97.78%), with only Plaintiff's case denied on November 9, 2023.

**a)** These unrecorded policies, absent from the Pennsylvania Bulletin, breach Pa.R.J.A. 103(d).

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS's dual role as petitioner and server, combined with procedural barriers like unrecorded hearings and denial of counsel, compromised the fairness of dependency proceedings.

**106)** From 2020–2025, Defendants Lawrence County, LCCYS, John Bongivengo, Caitlyn Windhorst, Elaine Peak, Starr, and Bout withheld numerous records from Plaintiff (e.g.,

adoption plans, intake forms, transcripts, assessments, medical records), violating 23 Pa.C.S. § 6340, 55 Pa. Code § 3490.67, and Pa.R.J.C.P. 1160.

**a)** This obstruction concealed misconduct and hindered Plaintiff's dependency case preparation.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as Defendants' withholding of records denied her access to evidence critical for dependency proceedings.

**107)** Between 2014 and 2023, LCCYS facilitated 369 adoptions, denying only Plaintiff's case, (Exhibit O) and achieved a 33.9% reunification rate, below Pennsylvania's 45% average, reflecting a policy prioritizing adoption over reunification.

**a)** From 2023 to 2024, LCCYS received three provisional licenses for notification and reunification failures; Director John Bout stated at a July 13, 2021, commissioner's meeting that the agency focuses on "generational dependencies" in recurring families.

**1)** These actions violated 42 U.S.C. § 1983 by depriving Plaintiff of her Fourteenth Amendment due process rights under color of state law, as LCCYS's adoption-driven policy obstructed her reunification efforts in dependency proceedings.

**COUNT I:**

**VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS:**

**SPECIFICALLY, 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

**PLAINTIFF v. DEFENDANTS:**

**LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, SUSAN PAPA, JASON MEDURE, DEANNA DEMONACO, JOHN BOUT, ELAINE PEAK, HEATHER STARR, NORA DIBUONO, JOHN BONGIVENGO, CAITLYN WINDHORST, DYLAN NEAL, MARISSA HEANEY, THE BAIR FOUNDATION, MARY**

**BURROWS, TANYA MONTGOMERY, CRAY YOUTH & FAMILY SERVICES,**
**CHASTITY MINNITE, AND DANIEL ALSDORF**

**42 U.S.C. § 1983 – EQUAL PROTECTION – CLASS OF ONE**

**108)**     Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**109)**     Heather Starr, John Bout, Elaine Peak, Caitlyn Windhorst, Nora DiBuono, Marissa Heaney, Dylan Neal, John Bongivengo, Deanna Demonaco, Susan Papa, Jason Medure, Mary Burrows, Chasity Minnitte, Daniel Alsdorf, and Tanya Montgomery, acting under color of state law for Lawrence County, LCCYS, The Bair Foundation, or Cray Youth & Family Services, intentionally treated Plaintiff differently from other similarly situated parents in Lawrence County dependency cases with comparable socioeconomic status and compliance records, targeting her as a low-income single mother with a disability and vocal advocate, in violation of *(Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)*, and *Thomas v. Independence Twp., 463 F.3d 285, 297 (3d Cir. 2006)*. Plaintiff intends to identify specific comparators through discovery.

**110)**     Starr and Neal filed baseless dependency petitions, Starr, Peak, and Heaney falsified records, DiBuono, Bongivengo, and Windhorst suppressed evidence, Papa denied hearings and recordings or minutes, Lawrence County posted a shaming social media post, and Demonaco, Medure, and Montgomery imposed or affirmed retaliatory fines and/or obstructions, unlike other parents who faced minimal scrutiny, to maximize adoption funding.

**111)**     This treatment, driven by animus against Plaintiff's advocacy (e.g., Peak's text calling her "horrible,"; Montgomery's instruction to report her ex-husband,) and financial incentives, was arbitrary, lacking any legitimate purpose, as no evidence supported neglect, violating Plaintiff's equal protection rights *(Olech, 528 U.S. at 564; Thomas, 463 F.3d at 297)*.

**112)**     Starr, Neal, Bout, Peak, Windhorst, DiBuono, Bongivengo, Heaney, Demonaco, Papa, Medure, Burrows, Minnitte, Alsdorf, and Montgomery's actions caused Plaintiff

severe emotional distress, forty four month custody loss, and economic damages, entitling her to relief as detailed in the prayer for relief *(Carey v. Piphus, 435 U.S. 247, 266 (1978); 42 U.S.C. § 1988)*.

### COUNT II:

### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS:

### SPECIFICALLY, 42 U.S.C. § 1983 AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY, LCCYS, PAPA, BONGIVENGO, BOUT, STARR, PEAK, WINDHORST, DIBUONO, MINNITTE, ALSDORF, THE BAIR FOUNDATION, BURROWS, MEDURE, DEMONACO, HEANEY, NEAL, MONTGOMERY, CRAY

### 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS
### RIGHT TO CARE AND CUSTODY OF CHILDREN

**113)**         Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**114)**         Heather Starr, Susan Papa, John Bout, Elaine Peak, Marissa Heaney, Tanya Montgomery, Chasity Minnitte, Daniel Alsdorf, Mary Burrows, Nora DiBuono, John Bongivengo, and Caitlyn Windhorst, acting under color of state law for Lawrence County, LCCYS, The Bair Foundation, or Cray Youth & Family Services, violated Plaintiff's Fourteenth Amendment substantive due process right to the care and custody of her children by arbitrarily seizing and prolonging their separation without evidence of harm, in violation of *Troxel v. Granville, 530 U.S. 57, 65 (2000)*, and *Croft v. Westmoreland Cty. CYS, 103 F.3d 1123, 1125 (3d Cir. 1997)*.

**115)**         Starr, for LCCYS, seized Plaintiff's children on July 22, 2021, without evidence of neglect, relying on an unsigned order, despite a negative drug test. Papa, for Lawrence County, authorized the seizure via an unrecorded hearing, barring evidence and counsel. Peak, Heaney, Montgomery, Minnitte, Alsdorf, Burrows, DiBuono, Bongivengo, and Windhorst, for

42

LCCYS, Bair, or Cray, prolonged the separation by falsifying records, denying court-ordered visits and therapy, and suppressing exculpatory assessments, lacking any legitimate purpose. Bout, as LCCYS Director, oversaw these actions under an adoption-driven policy prioritizing funding over reunification, shocking the conscience (*County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)*).

116)      LCCYS's systemic failures, under Bout's leadership, including a 33.9% reunification rate versus 45% statewide and three provisional licenses, enabled Starr, Papa, Peak, Heaney, Montgomery, Minnitte, Alsdorf, Burrows, DiBuono, Bongivengo, and Windhorst's arbitrary actions, exacerbating liability (*Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)*).

117)      Starr, Papa, Peak, Heaney, Montgomery, Minnitte, Alsdorf, Burrows, DiBuono, Bongivengo, Windhorst, and Bout's actions caused Plaintiff severe emotional distress, forty four monthz of custody loss, and economic damages, entitling her to compensatory damages, punitive damages for their willful and malicious conduct, nominal damages, and injunctive relief to restore her parental rights, (*Carey v. Piphus, 435 U.S. 247, 266 (1978))*.

## COUNT III:

## VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS:

## SPECIFICALLY, 42 U.S.C. § 1983 AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

## PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, SUSAN PAPA, NORA DIBUONO, JOHN BONGIVENGO, CAITLYN WINDHORST, MARISSA HEANEY, TANYA MONTGOMERY, ELAINE PEAK, JOHN BOUT

### 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS
### RIGHT TO NOTICE, HEARINGS, EVIDENCE, AND CONFRONTATION

118)      Plaintiff incorporates by reference the allegations in paragraphs 1-107.

119)      Susan Papa, Nora DiBuono, John Bongivengo, Caitlyn Windhorst, Marissa

Heaney, Tanya Montgomery, Elaine Peak, and John Bout, acting under color of state law for Lawrence County, LCCYS, or Cray Youth & Family Services, violated Plaintiff's Fourteenth Amendment procedural due process rights by denying her liberty interest in the care and custody of her children without adequate process, including notice, hearings, evidence access, and confrontation, increasing the risk of erroneous deprivation given the high private interest and low governmental burden, in violation of *Mathews v. Eldridge, 424 U.S. 319, 335 (1976).*

**120)**        These violations include:

**a)** Notice: Heaney, Montgomery, and Peak, for LCCYS and Cray, withheld notice of permanency hearings and case plans, preventing Plaintiff's preparation and prolonging custody loss.

**b)** Hearings: Papa, for Lawrence County, conducted unrecorded hearings, barring Plaintiff's evidence and counsel, denying her opportunity to contest dependency and delaying reunification.

**c)** Evidence and Confrontation: DiBuono, Bongivengo, and Windhorst, for LCCYS, suppressed six negative drug assessments and parental capacity assessments, obstructing Plaintiff's ability to challenge allegations and extending separation. Bout, as LCCYS Director, oversaw these denials under an adoption-driven policy prioritizing funding over reunification.

**121)**        LCCYS's systemic failures, under Bout's leadership, including deficient notification and reunification practices evidenced by a 33.9% reunification rate versus 45% statewide and three provisional licenses, enabled Papa, DiBuono, Bongivengo, Windhorst, Heaney, Montgomery, and Peak's violations, exacerbating liability *(Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).* Papa's record-keeping failures are argued as administrative, not judicial, acts *(Forrester v. White, 484 U.S. 219 (1988)).*

44

**122)**    Papa, DiBuono, Bongivengo, Windhorst, Heaney, Montgomery, Peak, and Bout's actions caused Plaintiff severe emotional distress, forty four month custody loss, and economic damages, entitling her to relief as detailed in the prayer for relief, *(Carey v. Piphus, 435 U.S. 247, 266 (1978))*. Ongoing campaign actions are addressed in Counts I, VII, XIV, XVII, and XVIII.

## COUNT IV:

### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS:

### SPECIFICALLY, 42 U.S.C. § 1983, FIRST, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY, LCCYS, PAPA, BONGIVENGO, BOUT, STARR, PEAK, WINDHORST, DIBUONO, MINNITTE, ALSDORF, THE BAIR FOUNDATION, BURROWS, MEDURE, DEMONACO, HEANEY, NEAL, MONTGOMERY, CRAY

### 42 U.S.C. § 1983 – RETALIATION FOR FAMILIAL ASSOCIATION & FREEDOM OF SPEECH AND EXPRESSION

**123)**    Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**124)**    Elaine Peak, Tanya Montgomery, Chasity Minnitte, Daniel Alsdorf, Mary Burrows, Caitlyn Windhorst, Deanna Demonaco, and John Bout, acting under color of state law for Lawrence County, LCCYS, The Bair Foundation, or Cray Youth & Family Services, violated Plaintiff's First Amendment right to free speech and Fourteenth Amendment right to familial association by retaliating against her for engaging in protected activities, including public protests, filing an ADA complaint, maintaining familial bonds, and disassociating from her father and ex-husband's unrelated legal troubles, in violation of *Perry v. Sindermann, 408 U.S. 593, 597 (1972)*, and *Moore v. City of East Cleveland, 431 U.S. 494, 503–04 (1977)*.

**125)**    Plaintiff protested Lawrence County and LCCYS's misconduct on May 14,

2021, filed an ADA complaint on June 25, 2024, sought to maintain bonds through court-ordered visits and therapy, and disassociated from her father's criminal proceedings and ex-husband's legal troubles despite her remarriage. In retaliation, Peak, Montgomery, Minnitte, Alsdorf, Burrows, Windhorst, and Demonaco canceled visits, canceled therapy sessions, falsified reports and testimony, publicly shamed Plaintiff via social media, imposed falsified fines, rejected court filings, coerced child rejection letters, encouraged false reports against Plaintiff's ex-husband to lump her with his actions, and falsely linked her to her father's and ex-husband's unrelated legal troubles in court filings and proceedings, to suppress her advocacy and sever familial ties. Bout, as LCCYS Director, enabled these acts under an adoption-driven policy prioritizing funding over reunification.

**126)**    LCCYS's systemic failures, under Bout's leadership, including a 33.9% reunification rate versus 45% statewide and three provisional licenses, enabled Peak, Montgomery, Minnitte, Alsdorf, Burrows, Windhorst, and Demonaco's retaliatory actions, exacerbating liability *(Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))*.

**127)**    Peak, Montgomery, Minnitte, Alsdorf, Burrows, Windhorst, Demonaco, and Bout's actions caused Plaintiff severe emotional distress, forty four month custody loss, and economic damages, entitling her to compensatory damages, punitive damages for their willful conduct, nominal damages, and injunctive relief to cease retaliation and restore her familial associations *(Carey v. Piphus, 435 U.S. 247, 266 (1978))*.

**COUNT V:**

**VIOLATION OF AMERICANS WITH DISABILITIES ACT:**

**PLAINTIFF v. DEFENDANTS:**

**LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES,**

**CRAY YOUTH & FAMILY SERVICES, SUSAN PAPA, JOHN BOUT, HEATHER STARR, ELAINE PEAK, CAITLYN WINDHORST, CHASITY MINNITTE, DANIEL ALSDORF, DEANNA DEMONACO, TANYA MONTGOMERY**

**42 U.S.C. §§ 12131–12134 & 29 U.S.C. § 794 – DISCRIMINATION BASED ON DISABILITY, FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS, DISCRIMINATORY PRACTICES IN COURT PROCEEDINGS, AND RETALIATION**

128)     Plaintiff incorporates by reference the allegations in paragraphs 1-107.

129)     Susan Papa, John Bout, Heather Starr, Elaine Peak, Caitlyn Windhorst, Chasity Minnitte, Daniel Alsdorf, Deanna Demonaco, and Tanya Montgomery, acting under color of state law for Lawrence County, LCCYS, or Cray Youth & Family Services, discriminated against Plaintiff based on a perceived mental disability, failed to provide reasonable accommodations, employed discriminatory court practices, and retaliated against her for asserting ADA rights, in violation of 42 U.S.C. §§ 12131–12134 (ADA Title II), 29 U.S.C. § 794 (Section 504), *Tennessee v. Lane, 541 U.S. 509, 531 (2004)*, and *Chisolm v. McManimon, 275 F.3d 315, 325–26 (3d Cir. 2001)*.

130)     Defendants, receiving federal financial assistance, falsely regarded Plaintiff as mentally unstable without evidence, with Starr claiming she was "too depressed" to parent, Peak alleging non-compliance with mental health evaluations, and LCCYS asserting unfitness. Based on this perception, Starr and Papa unlawfully removed Plaintiff's children on July 22, 2021, without evidence of neglect, Peak, Montgomery, Minnitte, Alsdorf, and Windhorst restricted court-ordered visitation, and Demonaco denied accessible court access by rejecting filings, excluding Plaintiff from dependency proceedings due to her perceived disability.

131)     Despite Plaintiff's July 2024 request for accessible case file formats, LCCYS and Demonaco refused, obstructing her defense. Papa conducted unrecorded hearings, barring evidence and counsel, and Peak, Windhorst, and Montgomery withheld exculpatory

assessments, constituting discriminatory practices that excluded Plaintiff from fair participation in court proceedings.

**132)** Following Plaintiff's June 25, 2024, ADA complaint, Peak, Montgomery, Minnitte, Alsdorf, Windhorst, and Demonaco retaliated by canceling visits and therapy, escalating false allegations via testimony and reports, and rejecting court filings and docket access, to deter her from asserting ADA rights. Bout, as LCCYS Director, enabled these acts under an adoption-driven policy prioritizing funding over reunification.

**133)** LCCYS's systemic failures, under Bout's leadership, including a 33.9% reunification rate versus 45% statewide and three provisional licenses, enabled Papa, Starr, Peak, Windhorst, Minnitte, Alsdorf, Demonaco, and Montgomery's discriminatory and retaliatory actions, exacerbating liability *(Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))*.

**134)** Papa, Starr, Peak, Windhorst, Minnitte, Alsdorf, Demonaco, Montgomery, and Bout's actions caused Plaintiff severe emotional distress, forty four month custody loss, economic damages, and dissolution of her marriage, entitling her to compensatory damages, punitive damages for their willful conduct, nominal damages, and injunctive relief to cease discrimination, provide accommodations, and restore her parental rights *(Carey v. Piphus, 435 U.S. 247, 266 (1978))*.

## COUNT VI:

### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS: SPECIFICALLY, THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, HEATHER STARR, CAITLYN WINDHORST, NORA DIBUONO, ELAINE PEAK, MARISSA HEANEY, JOHN BOUT, MARY BURROWS, CHASITY MINNITTE, DANIEL ALSDORF, THE BAIR FOUNDATION, CRAY YOUTH & FAMILY SERVICES

48

## 42 U.S.C. § 1983 – RIGHT TO REFUSE MEDICAL TREATMENT

**135)**　　　　Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**136)**　　　　Nora DiBuono, Caitlyn Windhorst, Chasity Minnitte, Daniel Alsdorf, Elaine Peak, Tanya Montgomery, Marissa Heaney, and John Bout, acting under color of state law for Lawrence County Children and Youth Services, Cray Youth & Family Services, or The Bair Foundation, violated Plaintiff's Fourteenth Amendment substantive due process right to refuse medical treatment for her children by forcibly vaccinating them without consent and coercing unwarranted mental health evaluations, in violation of *Troxel v. Granville, 530 U.S. 57, 65 (2000)*, and *Parham v. J.R., 442 U.S. 584, 602–03 (1979)*.

**137)**　　　　On April 13, 2023, DiBuono, Windhorst, Minnitte, and Alsdorf, acting for LCCYS and The Bair Foundation, vaccinated Plaintiff's children, K.G., M.G., and A.G., without her knowledge, consent, or a medical necessity, overriding her parental authority (23 Pa.C.S. § 6303(b.1)). Windhorst, acting through Peak, and Heaney coerced Plaintiff to undergo a mental health evaluation and take prescriptions as a condition for the return of her children, falsely alleging non-compliance, without court approval, conditioning visitation on compliance. Peak demanded baseless mental health evaluations on January 11, 2024, and January 14, 2025, falsely alleging non-compliance despite Plaintiff's compliance with court-ordered assessments, building on prior false claims of mental instability, including an unevidenced assertion of depression. These actions were arbitrary, lacking legitimate child welfare purpose, shocking the conscience *(County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998))*.

**138)**　　　　LCCYS, The Bair Foundation, and Cray's systemic failures, under Bout's leadership, including a 33.9% reunification rate versus 45% statewide and three provisional

licenses, enabled DiBuono, Windhorst, Minnitte, Alsdorf, Peak, Montgomery, and Heaney's violations, prioritizing adoption funding over family preservation, exacerbating liability *(Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))*.

**139)**    DiBuono, Windhorst, Minnitte, Alsdorf, Peak, Montgomery, Heaney, and Bout's actions caused Plaintiff severe emotional distress, forty four month custody loss, economic damages, and deprivation of her constitutional right to direct her children's medical care, entitling her to compensatory damages, punitive damages for their willful conduct, nominal damages, and injunctive relief to cease unlawful medical impositions and restore her parental rights *(Carey v. Piphus, 435 U.S. 247, 266 (1978))*.

## COUNT VII:

### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS: SPECIFICALLY, THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, HEATHER STARR, JOHN BOUT, SUSAN PAPA

### 42 U.S.C. § 1983 – UNLAWFUL ENTRY – RIGHT TO PRIVACY

**140)**    Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**141)**    Heather Starr, Susan Papa, and John Bout, acting under color of state law for Lawrence County Children and Youth Services, violated Plaintiff's Fourth Amendment right against unreasonable searches and seizures and Fourteenth Amendment right to privacy by orchestrating and executing a warrantless entry into her home and an unlawful seizure of her children without consent, exigent circumstances, or valid judicial authorization, in violation of *Payton v. New York, 445 U.S. 573, 590 (1980)*, and In the Interest of *D.R., 216 A.3d 286, 294–95 (Pa. Super. Ct. 2019)*.

142)        On July 14, 2021, Starr, directed by LCCYS under Bout's policy, entered Plaintiff's home without a warrant, consent, or exigent circumstances. Defendant Starr intruded Plaintiff's bathroom during an unannounced visit, despite no evidence of neglect or immediate risk to K.G., M.G., or A.G.. On July 22, 2021, Starr seized Plaintiff's children without a signed court order, consent, or imminent danger, relying on an unrecorded hearing where Papa barred evidence and counsel and issued a non-final permanency review order, unsigned until July 27, 2021. These actions followed false claims of mental instability, including an unevidenced assertion of depression, to justify intervention without legal basis.

143)        Bout orchestrated these violations through an adoption-driven policy prioritizing funding over family preservation, lacking legitimate child welfare purpose. Papa sanctioned the seizure without a required shelter care hearing within 72 hours, failing to ensure judicial oversight and engaging in ex parte communication with LCCYS, in violation of procedural safeguards *(Good v. Dauphin Cty. Soc. Servs. for Children & Youth, 891 F.2d 1087, 1094–95 (3d Cir. 1989))*.

144)        LCCYS's systemic failures, under Bout's leadership, including a 33.9% reunification rate versus 45% statewide and three provisional licenses, enabled Starr and Papa's unconstitutional actions, exacerbating liability *(Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))*.

145)        Starr, Papa, and Bout's actions caused Plaintiff severe emotional distress, forty four month custody loss, and economic damages, including $15,000 in legal fees, and at least $35,000 in lost wages, entitling her to compensatory damages, punitive damages for their willful conduct, nominal damages, and injunctive relief to prevent further warrantless entries and seizures and restore her parental rights *(Carey v. Piphus, 435 U.S. 247, 266 (1978))*.

## COUNT VIII:

## PLAINTIFF v. DEFENDANTS:

## VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS: SPECIFICALLY, FIRST, FOURTH, & FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

## LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, JOHN BOUT, HEATHER STARR, MARISSA HEANEY, MARY BURROWS, CHASITY MINNITTE, DANIEL ALSDORF, ELAINE PEAK, DEANNA DEMONACO, SUSAN PAPA, NORA DIBUONO, JOHN BONGIVENGO, TANYA MONTGOMERY, CAITLYN WINDHORST, DYLAN NEAL, THE BAIR FOUNDATION, CRAY YOUTH & FAMILY SERVICES

## 42 U.S.C. §§ 1983 & 1985 – CONSPIRACY & CRIMINAL MISCONDUCT

146)        Plaintiff incorporates by reference the allegations in paragraphs 1-107.

147)        John Bout, Heather Starr, Marissa Heaney, Mary Burrows, Chasity Minnitte, Daniel Alsdorf, Elaine Peak, Deanna Demonaco, Susan Papa, Nora DiBuono, John Bongivengo, Tanya Montgomery, Caitlyn Windhorst, and Dylan Neal, acting under color of state law for Lawrence County Children and Youth Services, The Bair Foundation, or Cray Youth & Family Services, conspired to deprive Plaintiff of her First, Fourth, and Fourteenth Amendment rights, in violation of 42 U.S.C. §§ 1983 and 1985(3), by unlawfully removing her children, falsifying evidence, obstructing court access, delaying judicial proceedings, and coercing child rejection, motivated by adoption funding incentives and class-based animus against her as a low-income single mother, former foster child, and perceived mental disability *(Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Griffin v. Breckenridge, 403 U.S. 88, 102 (1971))*.

148)        Defendants agreed to obstruct Plaintiff's reunification with K.G., M.G., and A.G. through a coordinated scheme, evidenced by Peak's January 1, 2025, text to Minnitte and Alsdorf calling Plaintiff "horrible" and pushing SPLC despite court-ordered reunification, Papa's ex parte communications with LCCYS noted on a dependency petition Post-it note stating

"contacted Susan Papa", Bout's policy meetings prioritizing adoption funding, including a Commissioners' meeting statement that LCCYS targets low-income families as generational dependents, and a June 24, 2021, permanency review order selecting adoption as a concurrent goal despite available family. Their overt acts include:

**a)** Bout and LCCYS directed the scheme, withheld parental capacity assessments recommending unsupervised contact, appointed a biased ex-LCCYS therapist to misrepresent outcomes, targeted Plaintiff due to her foster care history and socioeconomic status, exploiting her as a generational dependent, and orchestrated delays in termination proceedings causing year-long hearing gaps.

**b)** Starr conducted a warrantless home entry on July 14, 2021, seized Plaintiff's children without a signed court order or exigent circumstances, falsely claimed Plaintiff was "too depressed" without medical evidence, and withheld medical records.

**c)** Heaney falsified service plans with unattainable goals and coerced medical evaluations without court approval blinded by her private GED contract with the county through her business.

**d)** Peak provided false testimony on January 14, 2025, coordinated visit cancellations, withheld assessments, and defamed Plaintiff as "horrible" to push SPLC.

**e)** Minnitte and Alsdorf, for The Bair Foundation, were positioned as pre-adoptive parents to facilitate adoption, coerced Plaintiff's children to write rejection letters under duress to the Plaintiff, and canceled court-ordered visits.

**f)** Burrows coached rejection letters from the children as a "pre-adoption formality" on January 29, 2025.

**g)** Cray withheld records to obstruct Plaintiff's defense.

**h)** Demonaco rejected pro se filings, citing attorney unresponsiveness, and delegated

service duties to LCCYS, bypassing Pa.R.C.P. 236.

**i)**   Papa failed to record hearings she presided over including the last one with Plaintiff on July 31, 2023, coordinated record withholding via Post-it notes and email logs, issued a June 24, 2021, order prioritizing adoption, delayed termination hearings, and operated a law firm specializing in custody and adoption, including termination of parental rights, creating a conflict of interest while issuing orders favoring adoption over kinship care.

**j)**   DiBuono and Bongivengo,  each respectfully acting as solicitor for Lawrence County Children and Youth Services (LCCYS).  Bongivengo acted as LCCYS solicitor and previously served as Plaintiff's counsel, violated Plaintiff's rights under color of state law during a March 14, 2024, dependency hearing, by coercing Plaintiff to accept (SPLC) under threat of permanently losing her children, attempting to secure a coerced verbal waiver of Bongivengo's conflict of interest through her attorney after Plaintiff had raised the conflict many times years prior, filing a baseless involuntary termination of parental rights (ITPR) petition, withholding critical medical records, falsely linking Plaintiff to her father's unrelated criminal proceedings, and seeking continuances to delay hearings, with Bongivengo failing to oppose DiBuono's unfounded accusations due to his conflict and later collaborating on the ITPR petition to sever Plaintiff's parental bond, causing Plaintiff emotional distress, loss of familial association, and other harms.

**k)**   Montgomery conspired with caseworkers to bar communications and hold supervised visitations and furthered the conspiracy by falsely reporting a 2023 drug arrest and canceling visitations.

**l)**   Windhorst coerced medical evaluations, withheld assessment outcomes, and encouraged false reporting.

**m)**  Neal filed a baseless dependency petition, initiating the scheme.

**149)**       This conspiracy, driven by and reflecting a policy of hyperscrutinizing low-income former foster children like the Plaintiff, targeted her socioeconomic status, foster care history, and perceived mental disability, causing year-long gaps between hearings through coordinated delays to break familial bonds, violating:

**a)**  First Amendment: Retaliating against protests, obstructing court access, imposing baseless fines post-ADA complaint, and issuing a baseless citation *(Kush v. Rutledge, 460 U.S. 719, 726 (1983))*.

**b)**  Fourth Amendment: Warrantless entry and seizure *(Katz v. United States, 389 U.S. 347, 351 (1967))*.

**c)**  Fourteenth Amendment: Denying due process via removal without hearings or notice, issuing vague service plans (delaying termination hearings to break familial bonds, and equal protection by targeting socioeconomic status and foster history *(Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000))*.

**150)**       Non-state actors Minnitte, Alsdorf, Burrows, The Bair Foundation, and Cray are liable under § 1985(3) for conspiring with state actors, motivated by class-based animus *(Griffin v. Breckenridge, 403 U.S. 88, 102 (1971))*.

**151)**       LCCYS'S systemic failures, under Bout's leadership, including three provisional licenses for a multitude of violations of the regulations at 55 Pa. Code Chapter 3130 and Chapter 3490 and improper service delegation, enabled this conspiracy, exacerbating liability *(Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))*. Papa's record withholding was administrative, not judicial *(Forrester v. White, 484 U.S. 219 (1988))*.

**152)**       Bout, Starr, Heaney, Minnitte, Alsdorf, Burrows, Peak, Demonaco, Papa, DiBuono, Bongivengo, Montgomery, Windhorst, and Neal's actions caused Plaintiff severe

emotional distress, forty four month custody loss, and economic damages, including $15,000 in legal fees, at least $30,000 in lost wages, $53.75 in transcript costs, and $6,764 in fines and liens, entitling her to compensatory damages, punitive damages for their willful conduct, nominal damages, and injunctive relief to cease conspiratorial misconduct and restore her rights *(Carey v. Piphus, 435 U.S. 247, 266 (1978))*.

**COUNT IX:**

**MUNICIPAL LIABILITY**

**PLAINTIFF v. DEFENDANTS:**

**LAWRENCE COUNTY**

**<u>42 U.S.C. § 1983 – MONELL</u>**

**153)**        Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**154)**        Defendant Lawrence County, acting under color of state law, maintained a policy and custom of prioritizing adoption funding over family preservation, directly causing violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983, specifically her Fourth Amendment right against unreasonable searches and seizures and Fourteenth Amendment rights to procedural and substantive due process, in violation of Payton v. New York, 445 U.S. 573, 590 (1980), and Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

**155)**        Pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), and Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), Lawrence County is liable for its policy, articulated by LCCYS Director John Bout, of exploiting adoption funding incentives by targeting low-income families like Plaintiff's for child removal. Bout's July 13, 2021, Commissioners' meeting statement that LCCYS should "err on the side of caution" in removals, undisputed and backed by the County, formalized a policy encouraging aggressive child seizures without evidence

of imminent harm. This policy was implemented through:

**a)** Caseworker actions, including Defendant Starr's July 22, 2021, warrantless removal of Plaintiff's children, K.G., M.G., and A.G., absent any court order or exigent circumstances.

**b)** A custom of tolerating falsified records, as shown by Defendant Heaney's January 22, 2025, service plan falsely stating Plaintiff did not submit a June 2022 hair follicle test until 2024, despite Plaintiff's 2022 submission, which Heaney refused to correct after multiple notifications, with no LCCYS official intervening

**c)** Suppression of evidence, including parental capacity assessments withheld by Defendants DiBuono and Bongivengo in 2024, obstructing Plaintiff's reunification.

**d)** Acceptance of deficient child welfare practices, as evidenced by three consecutive provisional DHS licenses from December 18, 2023, to June 18, 2025, for failures in parent notification, risk assessment, and reunification services, per 55 Pa. Code § 3130.67, enabling misconduct like Heaney's falsification and Starr's removal.

**156)**    This County policy is further evidenced by its 99.73% adoption success rate (369 granted, 1 denied) from 2014–2023, compared to an average 97.52% success rate (2,480 granted, 58 denied) across six other 5th class counties (Adams: 95.24%, Blair: 98.54%, Lebanon: 98.67%, Lycoming: 97.50%, Mercer: 97.40%, Northumberland: 97.78%), and a 33.9% reunification rate in 2023, below Pennsylvania's 45% average, reflecting systemic prioritization of adoptions over family preservation.

**157)**    Lawrence County's deliberate indifference to these failures, per *Canton v. Harris*, 489 U.S. 378, 390 (1989), is shown by its inaction despite:

**a)** Bout's policy encouraging removals without evidence, leading to the July 22, 2021, seizure;

**b)** public concerns raised at the July 13, 2021, Commissioners' meeting about high custody numbers;

**c)** the November 9, 2023, dismissal of LCCYS's baseless termination petition for lack of evidence (¶ 80);

**d)** Plaintiff's repeated notifications to LCCYS that Heaney's January 22, 2025, service plan was false, which no official corrected;

**e)** the County's failure to address its 99.73% ITPR success rate, tolerating obstructionist tactics like Defendant Papa's unrecorded hearings.

**158)**         This indifference caused:

**a) Fourth Amendment Violation**: Defendant Starr's July 14 and 22, 2021, warrantless home entries and child seizures, driven by Bout's "err on the side of caution" policy;

**b) Fourteenth Amendment Procedural Due Process**: Unrecorded hearings by Defendant Papa on February 22, 2021, and July 31, 2023, denying Plaintiff a fair process, enabled by the County's obstructionist policy;

**c) Fourteenth Amendment Substantive Due Process**: Prolonged 44-month separation of Plaintiff's children by falsified records, including Heaney's false service plan, and withheld therapy by Defendants Peak and Heaney, facilitated by the County's provisional licenses and indifference.

**159)**         The County's policy and custom were the moving force behind these violations, causing Plaintiff severe emotional distress, forty four month custody loss, and economic damages of $56,817.75 ($15,000 legal fees, $30,000 lost wages, $53.75 transcript costs, $6,764 fines and liens). Defendant's actions were willful and reckless, subjecting it to liability without immunity.

**160)**        Plaintiff is entitled to:

**a)**  Compensatory damages for emotional distress, economic losses, and deprivation of constitutional rights;

**b)**  Nominal damages recognizing the violation of Plaintiff's rights (*Carey v. Piphus*, 435 U.S. 247, 266 (1978));

**c)**  Injunctive relief requiring Defendant to reform adoption funding policies, train caseworkers on due process and accurate record-keeping, and ensure Plaintiff's rights are protected (42 U.S.C. § 1988);

**d)**  Other relief as the Court deems just.

**COUNT X:**

**VIOLATION OF PENNSYLVANIA STATUTORY LAW**

**PLAINTIFF v. DEFENDANTS:**

**LAWRENCE COUNTY, LCCYS, PAPA, BONGIVENGO, BOUT, STARR, PEAK, WINDHORST, DIBUONO, THE BAIR FOUNDATION, BURROWS, MEDURE, DEMONACO, HEANEY, NEAL, AND MONTGOMERY**

**42 PA.C.S. § 8351 - WRONGFUL USE OF CIVIL PROCEEDINGS**

**161)**        Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**162)**        Lawrence County Children and Youth Services (LCCYS), John Bout, Heather Starr, Susan Papa, Nora DiBuono, John Bongivengo, Dylan Neal, Caitlyn Windhorst, Marissa Heaney, Tanya Montgomery, and Elaine Peak willfully initiated and pursued baseless civil proceedings, including dependency petitions filed on January 29, 2021, and January 20, 2023, an involuntary termination of parental rights (ITPR) petition on January 20, 2023, and a dependency petition refiled immediately after the ITPR's dismissal on November 9, 2023, against Plaintiff Margaret Deal without probable cause or legitimate child welfare purpose, in violation of

Pennsylvania's Dragonetti Act, 42 Pa.C.S. § 8351, to harm her and sever her parental bond with K.G., M.G., and A.G., as established in *Broadwater v. Sentner, 725 A.2d 779, 782 (Pa. Super. Ct. 1999)*.

163)    LCCYS, Bout, Starr, Papa, DiBuono, Bongivengo, Neal, Windhorst, Heaney, Montgomery, and Peak acted without evidentiary basis:

a)   Dylan Neal, Nora DiBuono, and LCCYS filed a baseless dependency petition on January 29, 2021, alleging medical neglect without findings of fact.

b)   Nora DiBuono, Caitlyn Windhorst, and LCCYS filed a baseless ITPR petition on January 20, 2023, with false affidavits and no allegations.

c)   Nora DiBuono, John Bongivengo, and LCCYS refiled a baseless dependency petition post-November 9, 2023, without notice, adjudicating the children dependent despite Plaintiff's belief they were returning home.

d)   Heather Starr, Susan Papa, Elaine Peak, Marissa Heaney, and Tanya Montgomery relied on falsified reports and testimony, including unevidenced claims of depression, drug use, and non-compliance.

e)   John Bongivengo, Heather Starr, and LCCYS withheld exculpatory evidence, including parental capacity assessments recommending unsupervised contact.

f)   Susan Papa ignored Plaintiff's compliance with court-ordered services, including negative drug tests and six assessments recommending no treatment.

164)    A June 2, 2023, Child Abuse History Certification confirmed Plaintiff had no record of abuse or neglect.

165)    Nora DiBuono, John Bongivengo, Susan Papa, and LCCYS exhibited gross negligence and reckless disregard by persisting with baseless proceedings after the ITPR petition

was dismissed on November 9, 2023, for inadequate notice and lack of factual support, refiling a

dependency petition without notice, and causing year-long hearing gaps through continuances, in

violation of *Keystone Freight Corp. v. Stricker, 31 A.3d 967, 973 (Pa. Super. Ct. 2011)*.

**166)**        John Bout, as LCCYS Director, maintained an adoption-driven policy,

prioritizing financial gain over Pennsylvania's reunification mandate (*In re R.J.T., 9 A.3d 1179,*

*1190 (Pa. Super. Ct. 2010))*.

**167)**        Specific malicious acts tied to the wrongful proceedings included:

**a)** Dylan Neal and Nora DiBuono filed the January 29, 2021, dependency petition without

evidence.

**b)** Nora DiBuono and Caitlyn Windhorst filed the January 20, 2023, ITPR petition with

false affidavits.

**c)** Nora DiBuono, John Bongivengo, and LCCYS refiled a dependency petition post-

November 9, 2023, concealing it from Plaintiff and adjudicating the children dependent.

**d)** Heather Starr provided false reports, including false drug test claims.

**e)** Elaine Peak committed perjury by falsely testifying on January 14, 2025, that Plaintiff

failed a 2021 drug test and refused an assessment, despite six negative assessments.

**f)** Marissa Heaney falsified service plans with unattainable goals to justify continued

proceedings.

**g)** Tanya Montgomery falsely reported a 2023 drug arrest to support the proceedings.

**h)** Susan Papa failed to record hearings, issued a June 24, 2021, order prioritizing adoption

over kinship care, and ignored exculpatory evidence.

**i)** Nora DiBuono and John Bongivengo coerced Plaintiff to accept SPLC under duress

and threats of permanent custody loss during March 14, 2024 hearing, exploiting Bongivengo's

conflict of interest.

**j)** John Bongivengo, Heather Starr, and LCCYS withheld medical records and assessments from the court.

**168)** LCCYS, Bout, Starr, Papa, DiBuono, Bongivengo, Neal, Windhorst, Heaney, Montgomery, and Peak pursued these proceedings with malice to:

**a)** Punish Plaintiff for her public protests and ADA complaint, evidenced by retaliatory fines, citations, and Peak's conspiracy with Minnitte and Alsdorf to deny court-ordered visitations and therapy for nearly a year.

**b)** Exploit her low-income and former foster child status, hyperscrutinizing her as a generational dependent, as articulated by Bout's Commissioners' meeting statement.

**c)** Undermine her parental bond through delays, false claims, and Peak's efforts to manipulate the children to reject her, furthered by Peak's January 1, 2025, text pushing SPLC.

**169)** The actions of LCCYS, John Bout, Heather Starr, Susan Papa, Nora DiBuono, John Bongivengo, Dylan Neal, Caitlyn Windhorst, Marissa Heaney, Tanya Montgomery, and Elaine Peak directly caused Plaintiff severe emotional distress, including anxiety, depression, and trauma from forty four month custody loss, economic damages of at least $21,764, $15,000 in legal fees, at least $30,000 in lost wages, $53.75 in transcript costs, and $6,764 in fines and liens, and violation of her statutory rights under the Dragonetti Act (*Ludmer v. Nernberg, 640 A.2d 939, 942 (Pa. Super. Ct. 1994))*.

**170)** Plaintiff is entitled to:

**a)** Compensatory damages for emotional distress, economic losses, and custody loss;

**b)** Punitive damages for Defendants' willful malice (42 Pa.C.S. § 8353);

**c)** Nominal damages for statutory rights violations;

**d)**  Injunctive relief to halt baseless proceedings and protect Plaintiff's rights (42 Pa.C.S. § 8353);

**e)**  Other relief as the Court deems just

**COUNT XI:**

**VIOLATION OF PLAINTIFF'S PENNSYLVANIA COMMON LAW RIGHTS: ABUSE OF PROCESS & MALICIOUS ABUSE OF PROCESS**

**PLAINTIFF v. DEFENDANTS:**

**LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, HEATHER STARR, DYLAN NEAL, CAITLYN WINDHORST, DEANNA DEMONACO, AND NORA DIBUONO**

**<u>ABUSE OF PROCESS</u>**

**171)**  Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**172)**  Lawrence County Children and Youth Services (LCCYS) and Heather Starr willfully abused judicial processes in dependency and termination proceedings to achieve illegitimate ends, harming Plaintiff Margaret Deal, prolonging her separation from her children, K.G., M.G., and A.G., and advancing improper purposes, including financial gain, retaliation, and exploitation, rather than serving justice or protecting child welfare, in violation of Pennsylvania common law *(McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987); Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002))*.

**173)**  LCCYS, Neal, DiBuono and Starr committed the following abuses of process:

**a)**  LCCYS, Neal, and DiBuono filed a baseless dependency petition on January 29, 2021

**b)**  LCCYS, Windhorst, and DiBuono filed an involuntary termination of parental rights (ITPR) petition on January 20, 2023, without factual support.

**c)** Heather Starr falsified reports and testimony, including unevidenced claims of depression and drug use, to mislead courts.

**d)** LCCYS and Starr suppressed exculpatory evidence, including negative drug screens and an assessment recommending no treatment along with parental capacity assessments recommending unsupervised contact.

**e)** Lawrence County and Demonaco obstructed court access by rejecting pro se applications, denying docket access, and withholding transcripts, creating an obstruction loop.

**f)** LCCYS coerced a waiver of counsel conflicts and issued vague, unappealable service plans.

**174)**    These acts were driven by improper purposes:

**a)** Financial gain through adoption funding, pursued by LCCYS (*In re R.J.T., 9 A.3d 1179, 1190 (Pa. Super. Ct. 2010))*.

**b)** Retaliation by LCCYS and Starr for Plaintiff's public advocacy and ADA complaint, evidenced by baseless fines and citations.

**c)** Exploitation of Plaintiff's low-income single mother and former foster child status by LCCYS, hyperscrutinizing her as a generational dependent.

**175)**    LCCYS and Starr's intentional, reckless, and malicious conduct caused Plaintiff severe emotional distress, forty four month custody loss, and economic damages, including $15,000 in legal fees, and $6,764 in lost wages (*McNeil v. Jordan, 586 Pa. 413, 894 A.2d 1260, 1274 (2006))*.

**176)**    As a direct and proximate result, Plaintiff suffered:

**a)** Severe emotional distress, including anxiety and depression from forty four month child separation.

**b)**  Loss of custody for forty four months.

**c)**  Economic damages, including $15,000 in legal fees and at least $30,000 in lost wages.

**d)**  Violation of her Pennsylvania common law rights.

**177)**      Plaintiff is entitled to:

**a)**  Compensatory damages for emotional distress, custody loss, and economic harm;

**b)**  Punitive damages for Defendants' willful, egregious, and malicious misconduct (*Feld v. Merriam*, 485 A.2d 742, 747–48 (Pa. 1984));

**c)**  Nominal damages for the violation of her rights;

**d)**  Injunctive relief to cease abusive proceedings, provide unobstructed access to court records and filings, and protect Plaintiff's parental rights;

**e)**  Other relief as the Court deems just

## COUNT XII:

### f) VIOLATION OF PLAINTIFF'S PENNSYLVANIA COMMON LAW RIGHT:

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY, LAWRENCE CHILDREN AND YOUTH SERVICES, HEATHER STARR, MARISSA HEANEY, MARY BURROWS, CHASITY MINNITTE, DANIEL ALSDORF, THE BAIR FOUNDATION, CRAY YOUTH & FAMILY SERVICES, ELAINE PEAK, CAITLYN WINDHORST, DYLAN NEAL, TANYA MONTGOMERY, NORA DIBUONO, JOHN BONGIVENGO

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**178)**      Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**179)**      Defendants intentionally or recklessly engaged in extreme and outrageous conduct, surpassing all bounds of decency, causing Plaintiff Margaret Deal severe emotional distress. *Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998); Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987)*.

**180)**    Specific outrageous acts include:

**a)** LCCYS, Heather Starr, Elaine Peak, Caitlyn Windhorst, and Dylan Neal deliberately falsified reports and testimony, including a 2020 ChildLine report with Plaintiff's 2023 address and false 2021 drug test claims, to mislead courts and prolong separation.

**b)** LCCYS, Caitlyn Windhorst, Elaine Peak, Mary Burrows, Chasity Minnitte, Daniel Alsdorf, The Bair Foundation, Montgomery, and Cray Youth & Family Services coerced Plaintiff's children to write rejection letters and withheld court-ordered therapy and visitations in 2022–2025, intentionally alienating them from Plaintiff.

**c)** LCCYS, Nora DiBuono, John Bongivengo, Heather Starr, Elaine Peak, and Caitlyn Windhorst suppressed exculpatory evidence, including six negative drug assessments and parental capacity assessments, to obstruct reunification and extend separation.

**181)**    These acts, executed with intent or reckless disregard for Plaintiff's emotional well-being, were motivated by retaliation for her advocacy and their financial incentives, causing:

**a)** Severe emotional distress, including anxiety, depression, and trauma, manifesting as physical symptoms (insomnia, headaches, heartbreak).

**b)** Prolonged separation from her children (forty four months), exacerbating distress.

**182)**    Plaintiff seeks:

**a)** Compensatory damages for severe emotional distress, apportioned jointly and severally among Defendants as an intentional tort (42 Pa.C.S. § 7102(a.1)(3)(ii)).

**b)** Punitive damages for Defendants' outrageous conduct (42 Pa.C.S. § 8316).

**c)** Nominal damages for violation of her Pennsylvania common law rights.

**d)** Injunctive relief to cease Defendants' outrageous conduct, including falsification,

coercion, and public shaming, and to protect Plaintiff's parental rights.

## COUNT XIII:

### VIOLATION OF PLAINTIFF'S PENNSYLVANIA COMMON LAW RIGHT:

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY, LAWRENCE CHILDREN AND YOUTH SERVICES, HEATHER STARR, MARISSA HEANEY, MARY BURROWS, CHASITY MINNITTE, DANIEL ALSDORF, THE BAIR FOUNDATION, CRAY YOUTH & FAMILY SERVICES, ELAINE PEAK, CAITLYN WINDHORST, DYLAN NEAL, TANYA MONTGOMERY, NORA DIBUONO, JOHN BONGIVENGO

### <u>TORTIOUS INTERFERENCE WITH CUSTODIAL RIGHTS</u>

**183)** Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**184)** Plaintiff asserts tortious interference with custodial rights against Defendants Lawrence County, LCCYS, Heather Starr, Marissa Heaney, Mary Burrows, Chasity Minnitte, Daniel Alsdorf, The Bair Foundation, Cray Youth & Family Services, Elaine Peak, Caitlyn Windhorst, Dylan Neal, Tanya Montgomery, Nora DiBuono, and John Bongivengo. Defendants' malicious actions disrupted Plaintiff's custodial rights with K.G., M.G., and A.G., causing 44 months of custody loss and damages. This claim, per Restatement (Second) of Torts § 700, is supported by *Bartanus v. Lis, 332 Pa. Super. 48, 480 A.2d 1178, 1187–88 (Pa. Super. Ct. 1984) (Wieand, J., concurring)*, and *Bennett v. Collins, 423 A.2d 759 (Pa. Super. Ct. 1980)*.

**185)** Plaintiff was the legal custodian of K.G., M.G., and A.G., known to Defendants via dependency proceedings. Their willful misconduct under 42 Pa.C.S. § 8550 disrupted Plaintiff's custody, causing emotional distress, loss of companionship, and economic harm, actionable under Restatement § 700 *(Bartanus v. Lis, 332 Pa. Super. at 65–67; Pettit v. Namie, 931 A.2d 790, 801 (Pa. Commw. Ct. 2007))*. The November 9, 2023, dismissal and January 2025 order evidence bad faith, supporting Plaintiff's claim for custodial interference distinct from

emotional distress.

**186)**    Defendants intentionally interfered with Plaintiff's parental rights through the following outrageous and malicious acts:

**a)**    Unauthorized Removal of Children: On July 22, 2021, Defendant Heather Starr, acting on behalf of LCCYS, removed Plaintiff's children without a valid court order or exigent circumstances, relying on a non-final, unsigned permanency review order. This removal was intentional and without legal authority, directly interfering with Plaintiff's custodial rights.

**b)**    Prevention of Therapy and Visitations: Defendants LCCYS, Heather Starr, Caitlyn Windhorst, Elaine Peak, Mary Burrows, the Bair Foundation, Chasity Minnitte, and Daniel Alsdorf, Tanya Montgomery, and Cray Youth & Family Services deliberately withheld court-ordered therapy and canceled visitations, including those ordered by Judge Acker. These actions were taken with the intent to alienate the children from Plaintiff and disrupt their relationship.

**c)**    Manipulation and Alienation: Defendants Mary Burrows, Chasity Minnitte, Daniel Alsdorf, and The Bair Foundation coerced Plaintiff's children to write rejection letters during therapy sessions, labeling it a "pre-adoption formality". This manipulation was intended to alienate the children and sever Plaintiff's parental bond.

**d)**    Suppression of Evidence: Defendants Nora DiBuono and John Bongivengo, as LCCYS solicitors, intentionally suppressed exculpatory evidence, including six negative drug assessments and parental capacity assessments, to prolong separation and obstruct reunification. This suppression interfered with Plaintiff's ability to regain custody.

**e)**    Public Shaming: Defendants LCCYS, Tanya Montgomery, and Cray Youth & Family Services publicly shamed Plaintiff by posting her photo on social media for a child support warrant without notice, using incorrect addresses, and exposing private case details. This act was intended

to humiliate Plaintiff and interfere with her parental rights through public disgrace.

**f)** Manipulation for Financial Gain: Defendants LCCYS, Susan Papa, Heather Starr, Elaine Peak, and Caitlyn Windhorst manipulated dependency proceedings to prolong custody for financial incentives, exploiting LCCYS's adoption-driven policy. This manipulation interfered with Plaintiff's rights for Defendants' monetary benefit.

**187)**        Each of these actions directly caused the disruption of Plaintiff's custodial and relational rights:

**a)**  The unauthorized removal severed Plaintiff's physical custody.

**b)**  Withheld therapy and visitations prevented bonding and reunification.

**c)**  Child manipulation alienated the children, damaging the parent-child relationship.

**d)**  Evidence suppression obstructed legal remedies for regaining custody.

**e)**  Public shaming humiliated Plaintiff, impairing her ability to parent effectively.

**f)**  Financial manipulation prolonged separation for Defendants' gain.

**188)**        As a direct result, Plaintiff suffered:

**a)**  Loss of custody for forty four months.

**b)**  Severe emotional distress, including anxiety, depression, and trauma.

**c)**  Loss of companionship with her children and dissolution of her familial unit.

**d)**  Legal fees exceeding $15,000 in an attempt to regain custody.

**e)**  Physical symptoms, including insomnia, headaches, and hypertension.

**189)**        Defendants' actions were not part of legitimate custody proceedings but were malicious, as evidenced by:

**a)**  Falsified reports and testimony.

**b)**  Coercion of children.

**c)** Suppression of exculpatory evidence.

**d)** Public shaming without legal basis.

**e)** Financial manipulation contrary to reunification goals.

**190)**        Plaintiff seeks:

**a)** Compensatory damages for emotional distress, loss of custody, loss of companionship, and economic harm.

**b)** Punitive damages for Defendants' egregious conduct.

**c)** Nominal damages for violation of her Pennsylvania common law rights.

**d)** Injunctive relief to cease Defendants' interference and protect Plaintiff's parental rights.

### COUNT XIV:

### VIOLATION OF PLAINTIFF'S PENNSYLVANIA COMMON LAW RIGHT:

### PLAINTIFF v. DEFENDANTS:

### LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, HEATHER STARR, AND MARY BURROWS

### INTRUSION UPON SECLUSION

**191)**        Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**192)**        Plaintiff asserts a claim for Intrusion Upon Seclusion under Pennsylvania common law against Defendants Lawrence County Children and Youth Services (LCCYS), Heather Starr, Dylan Neal, Tanya Montgomery, Nora DiBuono, and Mary Burrows. This claim arises from Defendants' intentional and highly offensive intrusions into Plaintiff Margaret Deal's private affairs and spaces, where she had a reasonable expectation of privacy, causing severe emotional distress and harm to her relationship with her children, K.G., M.G., and A.G.

**193)** At all relevant times, Plaintiff had a reasonable expectation of privacy in her home, personal spaces (e.g., bathroom), confidential therapy sessions, and private court communications. Defendants were aware of this expectation, as their actions targeted these private domains without consent or legal justification, in violation of Plaintiff's rights under *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424 (Pa. 1975), and *Kline v. Sec. Guards, Inc.*, 996 A.2d 477, 483 (Pa. Super. 2010).

**194)** Defendants intentionally intruded upon Plaintiff's seclusion through the following acts:

**a)** Trespass into Home: On July 14, 2021, Defendant Heather Starr, acting on behalf of LCCYS, trespassed into Plaintiff's home without a warrant or exigent circumstances, violating her reasonable expectation of privacy in her residence.

**b)** Unannounced Bathroom Entry: During the same July 14, 2021 visit, Defendant Heather Starr entered Plaintiff's bathroom unannounced while she was showering, with her child M.G. nearby, ignoring Plaintiff's requests for privacy. This act deliberately invaded a highly private space.

**c)** Unwarranted Surveillance: Defendant LCCYS through unnamed caseworker monitored communications without consent or legal authority in 2023. This surveillance intruded upon her private life.

**d)** Attempted Intrusion into Therapy Sessions: Defendant Mary Burrows attempted to intrude into Plaintiff's confidential family therapy sessions with her children in 2025, seeking to monitor or influence these private communications without consent. This act targeted a protected therapeutic space meant for family healing.

**195)** Each intrusion was intentional, as Defendants acted with knowledge of

Plaintiff's privacy rights and without her consent

**196)**       These intrusions would be highly offensive to a reasonable person:

**197)**       As a direct result of these intrusions, Plaintiff suffered:

**a)** Severe emotional distress, including anxiety, humiliation, and PTSD.

**b)** Harm to her relationship with her children, as the intrusions disrupted her ability to parent effectively and maintain privacy in her home and therapy sessions.

**c)** Physical symptoms, including insomnia and headaches, exacerbated by the stress of repeated privacy violations.

**198)**       Defendants' actions were not part of legitimate child welfare investigations but were malicious and retaliatory.

**199)**       These acts align with LCCYS's broader adoption-driven policywhich prioritized financial gain over Plaintiff's privacy and parental rights, further evidencing malice.

**200)**       Plaintiff seeks:

**a)** Compensatory damages for emotional distress, harm to her relationship with her children, and economic losses.

**b)** Punitive damages for Defendants' egregious and retaliatory conduct, pursuant to 42 Pa.C.S. § 8316.

**c)** Nominal damages for violation of her Pennsylvania common law rights.

**d)** Injunctive relief to cease Defendants' intrusive actions, including unannounced entries, surveillance, interception of communications, and interference with therapy, and to protect Plaintiff's privacy rights.

## <u>COUNT XV:</u>

## **VIOLATION OF PLAINTIFF'S PENNSYLVANIA COMMON LAW**

**PLAINTIFF v. DEFENDANTS:**

**LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, THE BAIR FOUNDATION, CRAY YOUTH & FAMILY SERVICES**

**RESPONDEAT SUPERIOR LIABILITY**

**201)**        Plaintiff incorporates by reference the allegations in paragraphs 1-107.

**202)**        Lawrence County, Lawrence County Children and Youth Services (LCCYS), The Bair Foundation, and Cray Youth & Family Services are vicariously liable under respondeat superior for the tortious acts of their employees and agents—Heather Starr, John Bout, Elaine Peak, Caitlyn Windhorst, Nora DiBuono, Marissa Heaney, Mary Burrows, Dylan Neal, Tanya Montgomery, Deanna Demonaco, Jason Medure, Susan Papa, Chasity Minnitte, Daniel Alsdorf, and John Bongivengo—who acted within their employment or agency scope, furthering an adoption-driven agenda, in violation of Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998), Aiello v. Ed Saxe Real Estate, Inc., 499 A.2d 282, 285 (Pa. 1985), and Justice v. Lombardo, 208 A.3d 1057, 1068 (Pa. 2019). Minnitte and Alsdorf, as foster parents, acted under The Bair Foundation's direction.

**203)**        These tortious acts include:

**a)**  Unlawful Child Removal: Starr for LCCYS, removed Plaintiff's children on July 22, 2021, without a signed court order, shelter care application, or emergency custody filing, absent exigent circumstances, ignoring a negative drug test and Plaintiff's cooperation, denying services until after removal (Counts I–IV, VI).

**b)**  Evidence Suppression: Bout, DiBuono, Bongivengo, Starr, Peak, and Windhorst, for LCCYS, suppressed six drug assessments stating no recommendation, two parental capacity assessments, and medical records, obstructing reunification by withholding records from the courts and Plaintiff (Counts VII–VIII).

**c)** Retaliation and Obstruction: Peak, for LCCYS, texted Minnitte and Alsdorf in 2025 coordinating with them to deny visitation, implying Plaintiff's unfitness despite reunification goals, and Montgomery, for Cray, instructed K.G. to report Plaintiff's ex-husband, disrupting family bonds (Counts XI, XIV).

**d)** Obstruction of Reunification: Peak, Windhorst, DiBuono, for LCCYS, and Burrows, Minnitte, and Alsdorf, for The Bair Foundation, withheld court-ordered therapy and coerced rejection letters in 2023–2025, with Bair failing to supervise Minnitte and Alsdorf and agreeing and encouraging the defiance of court orders (Counts XI, XIV).

**e)** Defamation: Starr and Neal, for LCCYS, made false statements in a 2020-2021 ChildLine report, alleging false allegations and service plans Defendant Peak texted Minnitte and Alsdorf, calling Plaintiff "horrible" and pushing SPLC (Count XVII).

**f)** Abuse of Process/Wrongful Use: Starr, DiBuono, and Neal, for LCCYS, filed baseless petitions and falsified reports (Counts IX–X). Papa, for Lawrence County, allowed unrecorded sham hearings, barring Plaintiff's evidence and counsel, while operating a law firm focused on custody and adoption (Counts VII–VIII).

**g)** Denial of Court Records: Demonaco and Papa, for Lawrence County, denied dockets, filings, and transcripts in 2021–2025, with Papa's record-keeping failures constituting administrative misconduct(Counts VII–VIII).

**h)** Negligent Disclosure: Starr, Neal, and Peak, for LCCYS, provided false neglect allegations, contributing to Lawrence County's January 12, 2023, social media post implying Plaintiff's neglect (Counts XII, XVII, VIII).

**204)**  LCCYS's systemic failures, including three provisional licenses from December 18, 2023, to June 18, 2025, for deficient notification, supervision, and reunification, per

Pennsylvania Dependency Benchbook standards, enabled Starr, Neal, Bout, DiBuono, Bongivengo, Peak, Heaney, Windhorst, Montgomery, Burrows, Minnitte, and Alsdorf's tortious acts, exacerbating liability (distinguished from *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978))*.

205)    Starr's removal, Peak's texts, Burrows intrusion, Minnitte, Alsdorf, Peak, and Burrows therapy tampering, Starr, Heaney, and Peak's false statements, Neal, Windhosrt, and DiBuono's baseless petitions, Demonaco and Papa's record denials, and Starr and Peak's false allegations caused Plaintiff severe emotional distress, physical symptoms (insomnia, headaches, hypertension), economic damages ($15,000 legal fees, at least $30,000 lost wages), forty four month custody loss, reputational harm, and violations of her federal and state rights.

206)    Plaintiff seeks compensatory damages for emotional distress, reputational harm, economic losses, and custody loss; punitive damages for the reckless or willful conduct of Starr, Neal, Bout, DiBuono, Bongivengo, Peak, Heaney, Windhorst, Montgomery, Burrows, Minnitte, Alsdorf, Demonaco, Medure, and Papa (42 Pa.C.S. § 8316); nominal damages; and injunctive relief within 30 days to cease their tortious practices, reform policies, and ensure compliance with Pennsylvania Dependency Benchbook standards.

207)    Papa's actions may face judicial immunity, but record-keeping failures are argued as administrative, with Lawrence County liable for her willful neglect.

## PRAYER FOR RELIEF

From 2020 to 2025, Lawrence County and its Children and Youth Services, fueled by greed, targeted Margaret Deal, a low-income single mother, stripping her of her children via illegal seizures and fabricated evidence. They used baseless petitions, which were eventually dismissed, and blocked therapy, prioritizing adoption profits, with a 368:1 approval rate, over family unity.

Exploiting her maternal devotion, Defendants inflicted forty four months of custody loss, emotional anguish, and financial ruin, violating due process. Deal demands compensatory and punitive damages, injunctive relief to stop these abuses, and systemic reform to protect parental rights, holding Lawrence County accountable for its predatory misconduct.

**WHEREFORE**, in light of the foregoing, Plaintiff respectfully requests the following:

**A.    Declaratory Judgments** (28 U.S.C. §§ 2201–2202; 42 U.S.C. § 1983):

**1.** Declare that Defendants Lawrence County Children and Youth Services (LCCYS), Heather Starr, and John Bout violated Plaintiff's Fourth and Fourteenth Amendment rights by executing warrantless home entries and child removals on July 14 and July 22, 2021, without consent, exigent circumstances, or valid judicial authorization (Payton v. New York, 445 U.S. 573, 590 (1980)).

**2.** Declare that Defendants LCCYS, Elaine Peak, Caitlyn Windhorst, and Heather Starr violated Plaintiff's Fourteenth Amendment due process and equal protection rights, and Title II of the ADA (42 U.S.C. § 12132), by discriminating against her based on perceived mental disability (ADHD, anxiety, PTSD), despite parental capacity assessments confirming her fitness (Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

**3.** Declare that Defendants Lawrence County and Deanna Demonaco violated Plaintiff's Fourteenth Amendment procedural due process rights by obstructing access to court records and filings, including transcripts and dockets, from 2021 to 2025 (Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

**B.    Preliminary and Permanent Injunctions** (28 U.S.C. §§ 2201–2202; 42 U.S.C. § 1983):

**1.** Enjoin Defendants LCCYS, John Bout, Elaine Peak, Tanya Montgomery, Chastity Minnitte, and Daniel Alsdorf from further retaliatory actions against Plaintiff, including canceling court-ordered visits or coercing her children to reject her, effective immediately (Kush v. Rutledge, 460 U.S. 719,

726 (1983)).

**2.** Order Defendants LCCYS and John Bongivengo to produce all withheld evidence, including parental capacity assessments (January 29 and August 27, 2024) and CY48 reports, within 30 days.

**3.** Order Defendants LCCYS and Lawrence County to implement ADA-compliant procedures, including training caseworkers to avoid disability-based discrimination, within 60 days (42 U.S.C. § 12132).

**4.** Enjoin Defendants LCCYS, The Bair Foundation, Chasity Minnitte, and Daniel Alsdorf from obstructing court-ordered family therapy, ensuring Plaintiff's access to therapy sessions, effective within 14 days (*Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

**C.**     **Damages** (42 U.S.C. § 1983):

**1.** Award compensatory damages in an amount to be determined at trial for the profound harm of forty four months of separation from Plaintiff's children, K.G., M.G., and A.G., causing severe emotional distress, exacerbated anxiety, depression, and PTSD requiring ongoing therapy, reputational harm from public shaming, and economic losses including legal fees, lost wages, therapy costs, fines, and transcript expenses (*Carey v. Piphus*, 435 U.S. 247, 264 (1978)).

**2.** Award punitive damages in an amount to be determined at trial for Defendants' willful and malicious misconduct, including warrantless removals, falsified reports, defiance of court-ordered reunification, coercion of Plaintiff's children to reject her, and retaliation against her protected speech and ADA complaint, reflecting systemic bias evidenced by a 99.73% involuntary termination of parental rights success rate (; *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

**3.** Award nominal damages for violations of Plaintiff's constitutional and statutory rights (*Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

**D.**     **Costs and Expenses** (42 U.S.C. § 1988; 28 U.S.C. § 1920): Award costs, including filing

fees, service costs, and transcript expenses, as permissible for a pro se Plaintiff.

**E.    Other Equitable Relief**:

> **1.** Retain jurisdiction to enforce this judgment.
>
> **2.** Grant such further relief as the Court deems just and equitable.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues so triable.

Date                                                    Respectfully Submitted

May 26, 2025                                             s/ Margaret S. Deal