# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

## PITTSBURGH

| | |
|---|---|
| MARGARET S DEAL, | ) |
| | ) |
| Plaintiff, | ) 2:25-CV-00303-MJH |
| | ) |
| vs. | ) |
| | ) |
| LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES, SUSAN PAPA, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; HEATHER STARR, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; ELAINE PEAK, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; CAITLYN WINDHORST, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; MARISSA HEANEY, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JOHN BOUT, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; CRAY YOUTH AND FAMILY SERVICES, TANYA MONTGOMERY, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JOHN BONGIVENGO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; NORA DIBUONO, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; THE BAIR FOUNDATION, MARY BURROWS, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; CHASITY MINNITTE, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; DANIEL ALSDORF, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; DEANNA DEMONACO, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JASON MEDURE, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; AND DYLAN NEAL, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; | ) |
| | |
| Defendants, | |

## **MEMORANDUM OPINION**

On February 28, 2025, Pro Se Plaintiff, Margaret Deal, filed the present case. (ECF No. 1). On May 26, 2025, Ms. Deal filed a 78 page Amended Complaint against nineteen defendants, alleging various constitutional claims pursuant to 42 U.S.C. § 1983, a discrimination claim under Title II of the Americans with Disabilities Act, and various other state law claims. (ECF No. 51). On June 9, 2025, Defendants Lawrence County, Lawrence County Children and Youth Services, Susan Papa, Heather Starr, Elaine Peak, Caitlyn Windhorst, Dylan Neal, Marissa Heaney, John Bout, Nora DiBuono, Jason Mudure, and Deanna Demonaco ("County Defendants"), as well as Defendants Cray Youth and Family Services and Tanya Montgomery filed Motions to Dismiss the Amended Complaint and accompanying briefs. (ECF Nos. 58-59, 60-61). On June 18, 2025, Defendants Bair Foundation, Marry Burrows, Daniel Alsdorf and Chasity Minnite, filed Motions to Dismiss the Amended Complaint. (ECF Nos. 62-63, 64-65). On July 25, 2025, Defendant John Bongivengo filed a Motion to Dismiss the Amended Complaint and accompanying brief. (ECF Nos. 71 & 72). Ms. Deal responded to each of these Motions to Dismiss in turn. (ECF Nos. 66-70, 73). Defendants did not reply. The issues are fully briefed and ripe for disposition. For the reasons that follow, the Defendants' Motions to Dismiss will be granted.

**I.     Statement of Facts**

**A. County Defendants**

Ms. Deal is the mother of three children, K.G., M.G., and A.G. (ECF No. 51, at ¶ 6). On October 14, 2020, Lawrence County Children and Youth Services, ("LCCYS"), received a referral, related to Ms. Deal's children, alleging medical neglect, unsanitary conditions, and drug abuse. (*Id.* ¶ 36). Ms. Deal alleges that on October 19, 2020, Defendant Dylan Neal, a caseworker at LCCYS, visited Ms. Deal's home and concluded that there was no evidence of neglect or child abuse. (*Id.* ¶ 40). On January 29, 2021, LCCYS filed a dependency petition

related to M.G.'s lack of dental care. (*Id.* ¶ 42). Ms. Deal alleges that various County Defendants withheld medical records from Ms. Deal, which hindered her preparation for the dependency hearing related to the January 29, 2021 petition. (*Id.* ¶ 43). On February 22, 2021, an adjudication hearing was conducted before Hearing Master Susan Papa. (*Id.* ¶ 44). Ms. Deal alleges that Hearing Master Papa denied her request for a Judge to adjudicate the issue at the hearing, ignored Ms. Deal's objections, barred Ms. Deal from testifying, and pressured her to admit to the neglect allegations made against her. (*Id.*).

On May 20, 2021, LCCYS received a report that a methamphetamine lab was being operated at Ms. Deal's home. (*Id.* ¶ 46). Ms. Deal alleges the report was unsubstantiated. (*Id.*). Caseworker for Lawrence County, Heather Starr investigated Ms. Deal's home after the report, and she reported that Ms. Deal refused to comply with a court ordered hair follicle test, seemed to be intoxicated during the visit, and that the property was too large to search to confirm whether or not a meth lab existed. (ECF No. 51-5). On June 24, 2021, Hearing Master Papa held a permanency review hearing. (ECF No. 51, at ¶ 49). Ms. Deal alleges that, at the hearing, Defendant Starr made false statements about Ms. Deal's mental state and the condition of her home, but Ms. Deal was not permitted to counter such allegations. (*Id.*). Ms. Deal alleges that on July 19, 2021 she received a court order to get a hair follicle drug test; but, the order provided no location. (*Id.* ¶ 54). Ms. Deal alleges that on July 20, 2021 she submitted a negative drug test from MedExpress, which was rejected by Caseworker Starr, because it was not the hair follicle test that was requested. (*Id.*).

On July 22, 2021, Hearing Master Susan Papa held a dependency hearing and ordered the removal of Ms. Deal's children. (*Id.* ¶ 55). Ms. Deal alleges that the hearing was unrecorded, her private counsel was excluded from the hearing, and she was not informed of her right to a Judge.

3

(*Id.*). Ms. Deal's children were removed from her home on July 22, 2021. (*Id.* ¶ 56). On June 2, 2022, Hearing Master Papa required Ms. Deal to get another hair follicle, test based upon Caseworker Starr's allegations of drug abuse, which Ms. Deal alleges were unfounded. (*Id.* ¶ 63). On June 3, 2022, Ms. Deal submitted to the hair follicle drug test and Defendant Starr reported that the test came back positive. (*Id.* ¶ 64). Ms. Deal alleges she was never shown the drug test results. (*Id.*).

On January 10, 2023, Lawrence County Solicitor Dibuono and Caseworker Windhorst filed a petition to terminate Ms. Deal's parental rights. (*Id.* ¶ 66). Ms. Deal alleges that the petition was supported by false affidavits, which willfully misrepresented her non-compliance with mental health services. (*Id.* ¶¶ 66-68). Ms. Deal claims that LCCYS retaliated against her by refusing to mark parts of her January 2023 service plan as "completed." (*Id.* ¶ 69). On March 9, 2023, Ms. Deal was appointed new counsel, whom she alleges was ineffective. (*Id.* ¶ 70). Ms. Deal alleges that on April 18, 2023 Solicitor Dibuono filed a motion to approve vaccination of Ms. Deal's children, against Ms. Deal's wishes. (*Id.* ¶ 74). On July 31, 2023, another permanency review hearing was held in front of Hearing Master Papa and Hearing Master Papa determined that minimal progress had been made by Ms. Deal. (*Id.* ¶ 79). On November 9, 2023, Judge Acker dismissed the petition for termination of parental rights and reverted the Permanency Goal for the children to reunification. (*Id.* ¶¶ 80-81). On March 14, 2024, Judge Acker ordered therapeutic visits between Ms. Deal and her children to facilitate the goal of reunification. (*Id.* ¶ 85). Ms. Deal claims that Defendants did not set up the therapeutic visits until January of 2025, because of "various justifications." (*Id.*).

Ms. Deal alleges that in July 2024, Lawrence County Orphans Court Senior Chief Deputy, Deanna DeMonaco, would not accept Ms. Deal's pro se filings related to the dependency matter,

because Ms. Deal was represented by counsel. (*Id.* ¶ 89). Plaintiff claims that the denial of the pro se filings and Ms. DeMonaco's later communications with Lawrence County Solicitor, Jason Medure, involved gender discrimination. (*Id.* ¶ 94).

According to the pleadings, Ms. Deal's dependency proceedings are still ongoing in the Court of Common Pleas for Lawrence County. (ECF No. 51-9).

### B. Cray Youth and Family Services and Tanya Montgomery

Throughout the Amended Complaint Ms. Deal makes broad allegations against Cray Youth and Family Services ("CYFS") and Tanya Montgomery, the Assistant Supervisor for Cray Youth and Family Services. *See generally* (ECF No. 51). Ms. Deal alleges that CYFS and Assistant Supervisor Montgomery acted "under the color of state law" when providing case management services in dependency proceedings for Lawrence County. (*Id.* ¶¶ 15-16). Ms. Deal alleges that on August 21, 2021, CYFS and Assistant Supervisor Montgomery, "acting for LCCYS, enforced a policy that banned case discussion during supervised visits at Cray's facility." (*Id.* ¶ 62). Ms. Deal further alleges that on March 9, 2022, her husband was arrested outside of the CYFS visiting center at the direction of Assistant Supervisor Montgomery (*Id.* ¶ 71). Ms. Deal alleges that Assistant Supervisor Montgomery lost visitation summaries regarding her children, because of "computer error" and that Assistant Supervisor Montgomery attended dependency hearings after Assistant Supervisor Montgomery's involvement with the cases had concluded. (*Id.* ¶ 90). In addition to these allegations, Ms. Deal alleges that CYFS and Assistant Supervisor Montgomery were involved with the various alleged actions of the other defendants.

### C. The Bair Foundation and Mary Burrows

The Bair Foundation is "a private foster agency contracted by LLCYS, acting under color of state law, to provide foster care services in Plaintiff's case." (*Id.* ¶ 19). Mary Burrows is a Foster Care Specialist at the Bair Foundation. (*Id.* ¶ 20). Ms. Deal makes various broad and generalized allegations against the Bair Foundation and Mary Burrows within the Amended Complaint. *See generally* (ECF No. 51). The allegations, related to the Bair Foundation and Ms. Burrows, include coordination of Ms. Deal's children's vaccinations, (*Id.* ¶ 74), defiance of court order mandating therapeutic visits with Ms. Deal's children, (*Id.* ¶ 85), prolonging of the separation of Ms. Deal from her children, (*Id.* ¶¶ 114-115), coaching Ms. Deal's children to write rejection letters against Ms. Deal, (*Id.* ¶ 98), and other systematic failures within the LLCYS foster care system. (*Id.* ¶ 116).

### D. Chastity Minnitte and Daniel Alsdorf

Chastity Minnitte and Daniel Alsdorf are foster parents in Crawford County, Pennsylvania, who provided foster care for Ms. Deal's children starting in March of 2023. (*Id.* ¶ 72). Ms. Deal alleges that they acted under the color of state law through their contract with LCCYS. (*Id.* ¶¶ 21-22). Ms. Deal makes various broad and generalized allegations against Ms. Minnitte and Mr. Alsdorf, alleging that they were involved with many of the actions made by other defendants. *See generally* (ECF No. 51). Specifically, Ms. Deal alleges that Ms. Minnitte and Mr. Alsdorf refused phone calls made to Ms. Deal's children. (*Id.* ¶ 72). Ms. Deal also alleges that Ms. Minnitte "falsely alleged [Ms. Deal] harassed her own children to a former caseworker." (*Id.* ¶ 82). For the most part, Ms. Deal implicates these defendants through the actions made by other defendants.

### E. John Bongivengno

John Bongivengo is a Solicitor for LCCYS who had served as Ms. Deal's counsel in the past. (*Id.* ¶ 17). Ms. Deal brings constitutional and conflict of interest claims against Solicitor Bongivengo. Ms. Deal alleges that from February 17, 2021 to February 19, 2021, Solicitor Bongivengo withheld medical records about Ms. Deal's children from her. (*Id.* ¶ 43). Ms. Deal further alleges that she raised to Judge Acker that Solicitor's Bongivengo's involvement in the dependency hearings presented a conflict of interest, because Solicitor Bongivengo had represented Ms. Deal and her father in the past. (*Id.* ¶ 85). Ms. Deal alleges that she waived the conflict of interest but it was "coerced verbally." (*Id.*). Ms. Deal further alleges that on August 28, 2024, Solicitor Bongivengo withheld a prior parental capacity assessment from her. (*Id.* ¶ 92).

## II. Relevant Legal Standards

### A. 12(b)(6) Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III. Discussion

#### A. Younger Abstention

Defendants argue that, to the extent that Ms. Deal's claims are related to the ongoing dependency hearings, this Court should abstain from exercising jurisdiction in this matter pursuant to the *Younger* abstention doctrine. (ECF No. 59, at 9); (ECF No. 61, at 8-11); (ECF No. 63, at 7-11); (ECF No. 65, at 5-6); (ECF No. 72, at 5). Defendants argue that all of the *Younger* factors are satisfied, and that Ms. Deal fails to allege facts to show that any exceptions are applicable; and thus, this Court should abstain from exercising its jurisdiction. (ECF No. 59, at 9); (ECF No. 61, at 8-11); (ECF No. 63, at 7-11); (ECF No. 65, at 5-6); (ECF No. 72, at 5). Ms. Deal argues that the exceptions to the *Younger* doctrine apply to this case, and the Court should not abstain from exercising jurisdiction. (ECF No. 66, at 5-6); (ECF No. 68, at 7-10); (ECF No. 69, at 11-13); (ECF No. 70, at 6-8); (ECF No. 73, at 6-8). Ms. Deal further argues that she alleges systematic bad faith, irreparable harm, and that the absence of an adequate state forum makes *Younger* abstention inapplicable in this case. (*Id.*).

*Younger* abstention is a legal doctrine, which gives courts discretion in exercising jurisdiction over claims otherwise within the scope of federal jurisdiction when "exceptional circumstances… justify a federal court's refusal to decide a case in deference to the States." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 626-627 (E.D. Pa.) *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (citing *Sprint v. Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 74 (2013)). "Younger abstention is only appropriate in three types of underlying state cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function." *PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted). "Child custody proceedings fall

into the third category and are a 'strong candidate for *Younger* abstention.'" *Nellom v. Ambrose*, 2022 WL 4120265 (E.D. Pa. 2022) (citing *Mikhail*, 991 F. Supp 596 at 626). Further, *Younger* abstention is only appropriate where the relevant proceedings are "pending." *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992). The Third Circuit Court of Appeals has concluded that child custody proceedings are "ongoing" or "pending" for purposes of *Younger* abstention. *Gok v. United States*, 2023 WL 4140827 (E.D. Pa. 2023) (citing *Anthony v. Council* 316 F.3d 412, 419-21 (3d Cir. 2003)).

> The Third Circuit has delineated three factors for the *Younger* doctrine to apply:
>
> (1) there must be ongoing state proceedings that are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise federal claims. Even if the necessary three predicates exist, however, *Younger* abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.

*Anthony*, 316 F.3d 412 at 418 (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

### i.  *Younger* Factors

In this case, Ms. Deal does not ask this Court to directly modify or interfere with any child custody determinations; instead, she brings various constitutional, federal, and state claims against the actors involved with the various dependency hearings and events surrounding and leading up to such hearings, indirectly calling into question the legitimacy of the investigations related to the dependency hearings and the dependency hearings themselves. *See generally* (ECF No. 51). Ms. Deal asks this Court to rule on the constitutionality and legality of the various Defendants' actions. If this Court were to rule

10

on such issues, it could directly interfere with the workings of the state. Thus, this Court must contemplate whether *Younger* abstention is appropriate in this case.

As to the first factor, Child custody proceedings within Pennsylvania "must be viewed as a whole, rather than as individual [discrete] proceedings." *Mikhail*, 991 F. Supp 2d 596 at 623. The Pennsylvania Superior Court has stated that:

> [c]hild custody orders are temporary in nature and always subject to change if new circumstances affect the welfare of a child. The Commonwealth has a duty of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights.

*Arnold v. Arnold,* 847 A.2d 674, 677 (Pa. Super. Ct. 2004) (citation omitted). Additionally, and perhaps more importantly, according to the pleadings, the dependency case in this matter involving Ms. Deal's children, is still ongoing. Thus, the first *Younger* factor is met. (ECF No. 51-9).

As to the second factor, child custody proceedings implicate important state actions. *See Mikhail,* 991 F. Supp. 2d 596 at 628. "Family relations are a traditional area of state concern." *Moore v.* Sims, 442 U.S. 415, 435 (1979). Thus, the second factor is satisfied.

As to the third factor, "the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims,'" *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14, (1987) (quoting *Moore v. Sims,* 442 U.S. 415, 432 (1979)). A plaintiff cannot carry this burden simply by asserting "that state or Commonwealth courts may reject (or have rejected) arguments on the merits," *Mikhail,* 991 F. Supp.2d at 628-629 (citing *Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico,* 889 F.2d 1181, 1183 (1st Cir. 1989) (Breyer, J.) (citing cases)). Ms. Deal does not plead any

facts alleging that she could not raise her federal claims in state court, her allegations primarily focus on the mishandling of the investigations, related to the dependency hearings, and the unfavorable decisions made by the Defendants. Ms. Deal argues that the state forum was inadequate, because "key hearings were unrecorded, adjudication orders were vague and conclusory, hearings were subject to excessive delays, and appointed counsel failed to provide meaningful advocacy." (ECF No. 66, at 7). Ms. Deal also argues that the state forum was inadequate, because of the alleged "record of systematic bad faith." (ECF No. 69, at 12-13). None of these allegations show that Ms. Deal was procedurally barred from bringing her federal claims or these grievances in the state forum. As such, the third *Younger* factor is satisfied.

ii.  **Exceptions to Younger**

Since the three *Younger* factors are satisfied, *Younger* abstention is proper, unless Ms. Deal can show that an exception exists. Defendants argue that Ms. Deal fails to allege facts within her Complaint to show that any exception to *Younger* applies. (ECF No. 59, at 9); (ECF No. 61, at 8-11); (ECF No. 63, at 7-11); (ECF No. 65, at 5-6); (ECF No. 72, at 5). Defendants further argue that Ms. Deal's allegations of bad faith are conclusory; and thus, such allegations cannot establish any *Younger* exception. (*Id.*) Ms. Deal argues that she has alleged "systematic bad faith, irreparable harm, and the absence of an adequate state forum." (ECF No. 66, at 5-6); (ECF No. 68, at 7-10); (ECF No. 69, at 11-13); (ECF No. 70, at 6-8); (ECF No. 73, at 6-8).

The exceptions to *Younger* must be "narrowly construed" and apply only under "truly compelling circumstances." *Loftus v. Township of Lawrence Park,* 764 F. Supp. 354, 357 (W.D. Pa. 1991). "[S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of

presenting a highly unusual factual situation." *Moore v. Sims*, 442 U.S. 415, 433 (1979). The burden lies with the plaintiff to establish bad faith. *Loftus,* 764 F. Supp. at 357. "[A] plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception"; thus, "[m]ere conclusory allegations of bias are insufficient to overcome *Younger* abstention." *Mikhail,* 991 F. Supp. 2d at 630 (citing *Kirschner v. Klemons,* 225 F.3d 227, 236 (2d Cir. 2000)).

Ms. Deal argues that she has sufficiently alleged that Defendants acted in bad faith by fabricating allegations against her, suppressing evidence, failing to record hearings, coordinated delays in reunification efforts and lack of notice for hearings. (ECF No. 66, at 5-6); (ECF No. 68, at 7-10); (ECF No. 69, at 11-13); (ECF No. 70, at 6-8); (ECF No. 73, at 6-8). However, Ms. Deal's allegations are conclusory and primarily concern unfavorable outcomes from investigations made against her, the handling of her interactions with her children, and decisions made in the hearings related to her children. Such conclusory allegations are not sufficient to show that any *Younger* exception applies in this case.

Ms. Deal has not made sufficient allegations to show that any of the *Younger* exceptions apply in this case. All of Ms. Deal's constitutional, federal, and state claims against the Defendants are in some way related to the dependency hearings concerning Ms. Deal's children. If this Court were to rule on any of the claims while the state dependency hearings are ongoing, it would call into question the legitimacy of an active state court case and infringe upon the state court's independence. The *Younger* factors have been satisfied and Ms. Deal has not alleged facts to show that any exceptions apply; therefore, this Court will abstain from exercising

jurisdiction over any of Ms. Deal's claims against all Defendants. Defendants' Motions to Dismiss will be granted.[1]

## IV.     Conclusion

For the reasons stated above, the Court will abstain from exercising its jurisdiction over all of Ms. Deal's claims against Defendants. Defendants' Motions to Dismiss will be granted. All claims and counts against the Defendants will be dismissed. This case will be dismissed. A separate order to follow.

DATE: January 21, 2026

Marilyn J. Horan
United States District Judge

---

[1] The Defendants argue that there are many other issues with the First Amended Complaint, such as the statute of limitations for Ms. Deal's claims, various types of immunities afforded to Defendants, lack of specificity as to the claims against them, and waiver of certain claims. Since the Court is abstaining as to all claims and counts against Defendants, it will not discuss these issues in this opinion, but the Court notes their significance.