**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| MARGARET S DEAL,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE COUNTY, *et al.*,<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-00303-MJH |

**<u>MEMORANDUM OPINION</u>**

On February 28, 2025, Pro Se Plaintiff, Margaret Deal, filed the present case. (ECF No. 1). On May 26, 2025, Ms. Deal filed a 78 page Amended Complaint against nineteen defendants, alleging various constitutional claims pursuant to 42 U.S.C. § 1983, a discrimination claim under Title II of the Americans with Disabilities Act, and various other state law claims, related to state dependency proceedings regarding her two minor children. (ECF No. 51). On February 18, 2026, Plaintiff filed an 81-page Second Amended Complaint. (ECF No. 92). Various Defendants subsequently filed motions to dismiss the Amended Complaint. On March 4, 2026, Defendants Lawrence County, Lawrence County Children and Youth Services, Susan Papa, Heather Starr, Elaine Peak, Caitlyn Windhorst, Dylan Neal, Marissa Heaney, John Bout, Nora DiBuono, Jason Medure, and Deanna DeMonaco ("County Defendants"), filed the present Motion to Dismiss. (ECF No. 95). The County Defendants argue that Plaintiff's claims are time barred by the applicable statute of limitations, they are immune from suit, and that Plaintiff has failed to allege sufficient facts to bring any of her alleged claims. (*Id.* at 2). On March 18, 2018, Plaintiff filed an omnibus response to all Defendants' motions to dismiss. On March 25, 2026, the County

Defendants filed their reply. (ECF No 105). For the following reasons, the County Defendants' Motion to Dismiss will be granted in full.

## I. Statement of Facts

Ms. Deal is the mother of three children, K.G., M.G., and A.G. (ECF No. 92, at ¶ 6). On October 14, 2020, Lawrence County Children and Youth Services, ("LCCYS"), received a referral, related to Ms. Deal's children, alleging medical neglect, unsanitary conditions, and drug abuse by the parents. (*Id.* ¶ 39). Ms. Deal alleges that on October 19, 2020, Defendant Dylan Neal, a caseworker at LCCYS, visited Ms. Deal's home and concluded that there was no evidence of neglect or child abuse. (*Id.* ¶ 41). Thereafter, on January 29, 2021, LCCYS filed a dependency petition related to M.G.'s lack of dental care. (*Id.* ¶ 42). Ms. Deal alleges that various County Defendants withheld medical records from Ms. Deal, which hindered her preparation for the dependency hearing related to the January 29, 2021 petition. (*Id.* ¶ 43). On February 22, 2021, an adjudication hearing was conducted before Hearing Master Susan Papa. (*Id.* ¶ 44). Ms. Deal alleges that Hearing Master Papa denied her request for a Judge to hear and adjudicate the issue, ignored her objections, precluded her from testifying, and pressured her to admit to the neglect allegations against her. (*Id.*).

On May 20, 2021, LCCYS received a report that a methamphetamine lab was being operated at Ms. Deal's home. (*Id.* ¶ 46). Ms. Deal alleges the report was unsubstantiated. (*Id.*). Heather Starr, a caseworker for LCCYS, investigated Ms. Deal's home after the report, and she reported that Ms. Deal refused to comply with a court ordered hair follicle test, seemed to be intoxicated during the visit, and that the property was too large to search to confirm whether or not a meth lab existed. (ECF No. 92-5). On June 24, 2021, Hearing Master Papa held a permanency review hearing. (ECF No. 92, at ¶ 49). Ms. Deal alleges that, at the hearing, Defendant Starr made false

statements about Ms. Deal's mental state and the condition of her home, and that Ms. Deal was not permitted to counter such allegations. (*Id.*). Ms. Deal alleges that on July 19, 2021, she received a court order to get a hair follicle drug test; but the order provided no location. (*Id.* ¶ 54). Ms. Deal alleges that on July 20, 2021 she submitted a negative drug test from MedExpress, which was rejected by Caseworker Starr, because it was not the hair follicle test that had been requested. (*Id.*).

On July 22, 2021, Hearing Master Susan Papa held a dependency hearing and ordered the removal of Ms. Deal's children. (*Id.* ¶ 55). Ms. Deal alleges that the hearing was unrecorded, her private counsel was excluded from the hearing, and she was not informed of her right to a hearing before a Judge. (*Id.*). Ms. Deal's children were removed from her home on July 22, 2021. (*Id.* ¶ 56). On June 2, 2022, Hearing Master Papa required Ms. Deal to get another hair follicle test, based upon Caseworker Starr's allegations of drug abuse, which Ms. Deal alleges were unfounded. (*Id.* ¶ 63). On June 3, 2022, Ms. Deal submitted to the hair follicle drug test, following which Defendant Starr reported that the test came back positive. (*Id.* ¶ 64). Ms. Deal alleges she was never shown the drug test results. (*Id.*).

On January 10, 2023, Lawrence County Solicitor DiBuono and Caseworker Windhorst filed a petition to terminate Ms. Deal's parental rights. (*Id.* ¶ 66). Ms. Deal alleges that the petition was supported by false affidavits, which willfully misrepresented her non-compliance with mental health services. (*Id.* ¶¶ 66-68). Ms. Deal also claims that LCCYS retaliated against her by refusing to mark parts of her January 2023 service plan as "completed." (*Id.* ¶ 69). On March 9, 2023, Ms. Deal was appointed new counsel, whom she alleges was ineffective. (*Id.* ¶ 70). Ms. Deal alleges that on April 18, 2023 Solicitor DiBuono filed a motion to approve vaccination of Ms. Deal's children, which was against Ms. Deal's wishes. (*Id.* ¶ 74). On July 31, 2023, another

permanency review hearing was held in front of Hearing Master Papa, and Hearing Master Papa determined that minimal progress had been made by Ms. Deal. (*Id.* ¶ 79). On November 9, 2023, Judge Acker dismissed the petition for termination of parental rights, and reverted the Permanency Goal for the children to reunification. (*Id.* ¶¶ 80). On March 14, 2024, Judge Acker ordered therapeutic visits between Ms. Deal and her children in order to facilitate the goal of reunification. (*Id.* ¶ 85). Ms. Deal claims that Defendants did not set up the therapeutic visits until January of 2025, because of "various justifications." (*Id.*).

Ms. Deal alleges that in July 2024, Lawrence County Orphans Court Senior Chief Deputy, Deanna DeMonaco, refused to accept Ms. Deal's pro se filings related to the dependency matter, because Ms. Deal was then represented by counsel. (*Id.* ¶ 89). Plaintiff claims that the denial of the pro se filings and Ms. DeMonaco's later communications with Lawrence County Solicitor, Jason Medure, involved gender discrimination. (*Id.* ¶ 94).

On January 14, 2025, another permanency review hearing was held, and Plaintiff was not awarded custody of the children. Plaintiff alleges that certain County Defendants provided false information at the January 14, 2025 hearing. (*Id.* ¶ 97). On December 11, 2025, a final permanency review hearing was heled in the Lawrence County Court of Common Pleas. (*Id.* ¶ 108). On December 15, 2025, the dependency court issued orders that terminated the dependency cases for all three of Plaintiff's children and restored physical and legal custody of the children to Plaintiff. (*Id.* ¶ 109).

## II. Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to

establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

## III. Discussion

### A. Statute of Limitations for Federal Claims

Ms. Deal asserts various constitutional claims against Defendants pursuant to § 1983 at Counts I-IV, VI, and VII-VIII. County Defendants argue that most of Ms. Deal's § 1983 claims are barred by a two-year statute of limitations period, which began to run the date that Ms. Deal's children were removed from her custody. (ECF No 96, at 6-8). Ms. Deal argues that her § 1983 claims are not time barred, because of equitable tolling principles, or in the alternative, by the continuing violations doctrine. (ECF No. 104, at 5-6).

Constitutional claims brought under § 1983 are subject to a two-year statute of limitations period. "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir.2009). The limitations period for a § 1983 action is the limitations period for personal injury torts in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387, (2007). Pennsylvania has a two-year statute of limitations. *See Kach*,

589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). A claim accrues for statute of limitations purposes "when a plaintiff has a complete and present cause of action, that is, when [she] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Accordingly, a statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [her] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The accrual period for § 1983 claims, where the plaintiff's alleged harm is the removal of their children, begins the date that the children are removed. *Daniels v. Harper*, 2024 WL 580874, at * 4 (E.D. Pa. Feb. 13, 2024) (citing *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009.")). Additionally, to bring a § 1983 claim, a plaintiff must allege facts that show how each defendant was personally involved in the events and occurrences giving rise to each individual claim. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Ms. Deal filed her initial Complaint on February 28, 2025. Thus, for her § 1983 claims to be timely, the factual allegations that make up her constitutional claims must have occurred between February 28, 2023 and February 28, 2025. Any constitutional claims alleged by Ms. Deal, that fall within this timeframe, must assert independent actionable unlawful constitutional violations. Further, such constitutional claims must properly allege each of the County Defendants' individual personal involvement in the respective claims.

Ms. Deal contends that the statute of limitations should be equitably tolled. Equitable tolling is generally appropriate when: "(1) a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely

manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370 n. 9 (3d Cir. 2000). Based upon the facts alleged in Ms. Deal's Second Amended Complaint, equitable tolling is not applicable.

Ms. Deal broadly alleges that from July 22, 2021, the date of removal of her children, until the conclusion of the dependency proceedings, December 15, 2025, various County Defendants relied upon factually deficient documents, untrue statements, and they withheld documents from her to impede reunification. The core alleged constitutional violation in this case is the July 22, 2021 removal of her children. As of that date, Ms. Deal was aware of the alleged harm caused by the removal of her children. As such, equitable tolling principles do not apply in this case to toll the statute of limitations as to Ms. Deal's constitutional claims regarding the removal of her children through February 28, 2023. Thus, any conduct that predated February 28, 2023, falls outside the two-year statute of limitations and are precluded from any actionable § 1983 claims.

Ms. Deal also contends that the continuing violations doctrine applies in this case to toll the statute of limitations period related to her constitutional claims. The continuing violation doctrine provides an exception to the "strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." *Foster v. Morris*, 208 F. App'x 174, 177– 78 (3d Cir. 2006) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). The doctrine only applies when the alleged wrong "'is more than the occurrence of isolated or sporadic acts.'" *Id.* (quoting *Cowell*, 263 F.3d at 292). The following factors are to be considered in making this determination:

> (1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the

> consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292 (citations omitted). "The consideration of 'degree of permanence' is the most important of the factors." *Id.* If an act has a degree of permanence, then continuing violations doctrine is not a substitute for a plaintiff's "awareness of and duty to assert his/her rights" in a timely fashion. *Id.* at 295.

It is well-settled that the continuing violations doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a claim]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 154 (3d Cir. 1998) (quoting *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)). The Third Circuit has considered the continuing violations doctrine in the context of constitutional claims related to the removal of children, and has held that the removal of the child triggers plaintiff's awareness of their ability to bring suit. *See Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009."); *Moore v. Morrison*, 2022 WL 824102, at *5 (E.D. Pa. Mar. 18, 2022) (dismissing § 1983 claims as time-barred where the "amended complaint makes clear on its face that the plaintiffs knew at the time in January 2017 that their children were initially removed from their care;" and thus, "their claims related to the removal of their children started accruing at that time"); *Samantha M. v. Stepanik*, 2020 WL 1250116, at *5 (W.D. Pa. Feb. 4, 2020).

All of Ms. Deal's alleged constitutional claims against the County Defendants are related to the July 22, 2021 removal of her children. The July 22, 2021 removal of Ms. Deal's children

from her physical custody was an act that had an immediate degree of permanence. She challenged the removal from the outset**.** Ms. Deal's other allegations within her Second Amended Complaint, challenge the various dependency hearings, investigations, or interactions involving the County Defendants, related to the July 22, 2021 dependency and removal decision and her efforts towards reunification. Ms. Deal does not allege any facts to establish that the continuing violations doctrine applies in this matter to toll the statute of limitations before February 28, 2023.

Since equitable tolling principles and the continuing violations doctrine do not apply, any alleged constitutional claims, that occurred before February 28, 2023, will be dismissed as untimely. In addition, the latest dates for which Ms. Deal alleges facts involving Dylan Neal and Heather Starr predate February 28, 2023. Since there are no allegations against these two Defendants for actions that occurred on or after February 28, 2023, Dylan Neal and Heather Starr will be dismissed as Defendants. As amendment would be futile, Ms. Deal will not be granted leave to amend any § 1983 claims for conduct that occurred before February 28, 2023.

**i. Sufficiency of Timely Constitutional Claims**

Ms. Deal pleads allegations that certain County Defendants' post-February 28, 2023 conduct impeded her efforts to regain custody of her children, such that said conduct properly falls within the applicable statute of limitations. However, Ms. Deal's conclusory allegations are not sufficiently specific enough to establish any constitutional claims against any of the County Defendants. Further, Ms. Deal's allegations of post-February 28, 2023 conduct fail to establish any independent constitutional basis to establish that any individual County Defendant was personally involved in each alleged constitutional violation. As such, the County Defendants' Motion to Dismiss the constitutional claims, at Counts I-IV, VI, and VII-VIII, for actions that

post-date February 28, 2023, will be granted. Said claims will be dismissed. As the Court cannot say that amendment would be futile, Ms. Deal will be granted leave to amend said claims.[1]

**B. Immunity for the County Defendants**

The County Defendants argue that they are immune from all of the claims brought against them by Ms. Deal. The County Defendants assert that four different types of immunity apply to defeat all claims brought against them: absolute immunity for actions taken pursuant to a court order, judicial immunity, quasi-judicial immunity, and quasi-prosecutorial immunity. Ms. Deal argues that none of the County Defendants are immune from any of her claims. In support of this, she points to her broad and conclusory allegations that the County Defendants each acted with actual malice or concealed information from Ms. Deal.

**i. Absolute Immunity for Actions Taken Pursuant to Court Order**

Ms. Deal alleges facts that County Defendants facilitated vaccinations for her children without her consent to establish her constitutional and state law claims. The County Defendants, through an adopted argument presented by their co-defendants, contend that the vaccinations were conducted in accordance with a court order by Judge Acker on April 14, 2023.

The Third Circuit has held that, "it is well-settled that 'action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages.'" *McGeachy v. Doe*, 444 Fed. Appx. 510, 512 (3d Cir. 2011) (citing *Hamilton v. Leavy*, 322 F.3d 776, 782-83 (3d Cir. 2003)). Here, County Defendants are entitled to such immunity from any claims brought against them relative to allegations that, on April 14, 2023, her children were vaccinated without her permission. Ms. Deal pleaded that the children's vaccination was conducted pursuant to a

[1] The Court notes that in addition to the timeliness issues, many of Ms. Deals constitutional claims make broad allegations against all County Defendants for each of her alleged constitutional claims. If Ms. Deal amends her complaint, she must plead facts that sufficiently allege how each County Defendant was personally involved in each of the alleged constitutional violations.

court order. (ECF No. 91, at ¶ 74). Based upon the facts as pled, insofar as Ms. Deal alleges the County Defendants acted pursuant to the court order, said Defendants are immune from Ms. Deal's claims regarding the vaccinations, and said claims regarding the children's vaccinations will be dismissed. As amendment would be futile, Ms. Deal will not be granted leave to amend these claims.

**ii. Judicial Immunity for Susan Papa**

Defendants argue that Susan Papa is entitled to judicial immunity from all of Plaintiff's claims against her, because she was the Hearing Master in the dependency proceedings at issue. Ms. Deal responds, arguing that the allegations made against Defendant Papa were about actions Defendant Papa made in her administrative capacity, and that such actions are not afforded any immunity. (ECF No. 104, at 10). Judges are generally immune from a suit for money damages, unless those actions are "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The Third Circuit has held that hearing officers assigned to child custody cases have judicial immunity while conducting proceedings. *Little v. Hammond*, 744 F. App'x 748, 751 (3d Cir. 2018).

Every allegation made by Ms. Deal against Susan Papa relates to her actions as the Hearing Master while she adjudicated child dependency hearings related to Ms. Deal's children. Ms. Deal does not allege any facts to show that Susan Papa acted outside of her capacity as a judicial officer at any time during the dependency proceedings at issue. As such, all claims, as pled against Susan Papa, are barred by judicial immunity.

Accordingly, the County Defendants' Motion to Dismiss, as to Susan Papa, will be granted. All claims against Susan Papa will be dismissed. As amendment would be futile, Ms. Deal will not be granted leave to amend any claims against Susan Papa.

**iii. Quasi-Judicial Immunity for DeAnna DeMonaco**

Ms. Deal brings claims against Lawrence County Prothonotary Office employee, DeAnna DeMonaco, Orphans Court Senior Deputy. Ms. DeMonaco argues that she is entitled to quasi-judicial immunity from all claims brought against her, because the allegations against her describe conduct she performed in her ministerial capacity. Ms. Deal argues that Ms. DeMonaco is not entitled to any immunity for her actions, because she was acting in her ministerial or administrative capacity. (ECF No. 104, at 10).

Court prothonotaries, performing ministerial duties mandated by statute, are entitled to quasi-judicial immunity, because their "judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Malcomb v. Beaver County Pennsylvania (Prothonotary)*, 616 Fed. Appx. 44, 45 (3d. Cir. 2015) (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436, (1993) (citations omitted)). Ms. Deal names Ms. DeMonaco in many of her claims; however, the only specific allegations made against Ms. DeMonaco are that she rejected Ms. Deal's attempt to file documents with her office, because Ms. Deal was represented by an attorney of record. These allegations concern actions by Ms. DeMonaco, in accord with her performance and decisions concerning her ministerial duties attendant to her prothonotary role. As such, the County Defendants Motion to Dismiss all claims against Ms. DeMonaco will be granted. All claims against Ms. DeMonaco will be dismissed, and she will be dismissed as a party. As amendment would be futile, Ms. Deal will not be granted leave to amend her claim against Ms. DeMonaco.

**iv. Quasi-Prosecutorial Immunity for CYS Defendants**

Ms. Deal brings individual claims against many individual Defendants who each work, or formerly worked, as county employees for LCCYS. These Defendants include Heather Starr, Elaine Peak, Caitlyn Windhurst, Marissa Heaney, John Bout, Dylan Neal, and Nora DiBuono.[2] These individuals, as moving County Defendants, argue that CYS employees are entitled to quasi- prosecutorial immunity for their actions taken on behalf of the state in relation to these dependency proceedings. (ECF No. 96, at 9-10). Ms. Deal argues that she has alleged facts to show that each of the CYS employees acted outside of their functions as CYS employees or acted with actual malice in such a way that would override any immunity to which they are entitled.

"CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997). Further, courts have held that even when plaintiffs allege that CYS workers relied on false information or made false statements, they were still immune from suit. *See Sporish v. Cnty. of Delaware, Pa.*, 2013 WL 5272832, at *8 (E.D. Pa. Sept. 18, 2013); *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, 2020 WL 7223416, at *8 (E.D. Pa. Dec. 8, 2020); *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, 2016 WL 2897470, at *4-5 (E.D. Pa. May 17, 2016); This quasi-prosecutorial immunity also extends to county solicitors, such as Ms. DiBuono, who initiate child dependency hearings. *Dunsmore v. Chester Cnty. Child. & Youth Servs.*, 1993 WL 101200, at *2 (E.D. Pa. Apr. 6, 1993); *Ernst*, 180 F.3d at 496-97.

[2] As mentioned above, Heather Starr and Dylan Neal will be dismissed based upon the statute of limitations.

The timely allegations made by Ms. Deal, against the individually named Defendants, employed by LCCYS, all relate to initiating, making recommendations, preparing documents for dependency hearings, and testifying in court. Such is also true for all of the allegations made against Solicitor DiBuono. The alleged post-February 28, 2023 conduct does not identify any individual County Defendants who acted in any way that was unrelated to these functions. Thus, Defendants Heather Starr, Elaine Peak, Caitlyn Windhurst, Marissa Heaney, John Bout, Dylan Neal, and Nora DiBuono are entitled to quasi-prosecutorial immunity as to all the claims in the Second Amended Complaint. Accordingly, the County Defendants' Motion to Dismiss will be granted as to all claims against Elaine Peak, Caitlyn Windhurst, Marissa Heaney, John Bout, and Nora DiBuono. Said Defendants will be dismissed from the case. Ms. Deal will be granted leave to amend her claims against Elaine Peak, Caitlyn Windhurst, Marissa Heaney, John Bout, and Nora DiBuono.

**C. *Monell* Claims against Lawrence County**

Ms. Deal brings claims against Lawrence County and Lawrence County CYS. As regards LCCYS, defense argues that LCCYS is the improper entity to sue. Offices or departments of a county are not properly "persons" capable of being sued under § 1983, because they are arms of their respective political subdivisions. *See Kirk v. Caulfield*, 2022 WL 19406593, at *3 (W.D. Pa. May 17, 2022). For the purposes of § 1983 liability, the Third Circuit has treated a municipality and its agencies as a single entity. *See Taylor v. Pennsylvania*, 2018 WL 6574187, at * 6 (M.D. Pa. Dec. 12, 2018). As such, LCCYS will be dismissed as a party.

As regards Lawrence County, Defendants argue that Ms. Deal fails to plead sufficient facts to appropriately allege municipal liability under *Monell v. Dept. of Soc. Servs. of City of New York* 436 U.S. 658 (1978). (ECF No. 96, at 19-20). Ms. Deal contends that she has properly pled facts

to allege municipal liability for Lawrence County. She asserts that she has alleged that Lawrence County has a systematic custom of unconstitutional seizures of children and that there is a pattern of misconduct from county employees that was known to Lawrence County.

Under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), a local government is subject to liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of by the plaintiff. *Id.* If there is no underlying constitutional violation, *Monell* liability cannot exist. *Bridges v. Scranton Sch. Dist.*, 644 F. App'x 72, 178 (3d Cir. 2016). Policy can be adopted when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). A course of conduct is considered a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law. *Id.*

First, as addressed and determined in the above sections, Ms. Deal's pre-February 28, 2023 constitutional claims are barred by the statute of limitations. Further, Ms. Deal does not allege sufficient facts to establish any post-February 28, 2023 constitutional claims, and even if she did, she has not alleged facts to overcome the immunities entitled to the County Defendants. Thus, Ms. Deal has not alleged any sufficient underlying constitutional violation for which *Monell* liability can attach. Second, even if Ms. Deal had properly alleged underlying constitutional claims, she does not allege any facts to show that Lawrence County's policies or customs caused any underlying constitutional violations. Ms. Deal references statistics within her Second Amended Complaint to support her contention that Lawrence County abided by an "adoption-driven policy;" but, she does not allege any specific policies or customs that causally

relate to the statistics she cites or to the specific constitutional violations that she claims. As such, Ms. Deal has not pled any facts sufficient to establish *Monnell* liability for Lawrence County. The County Defendants' Motion to Dismiss all claims against Lawrence County will be granted. The municipal liability claims against Lawrence County, will be dismissed. As the Court cannot say that amendment would be futile, Ms. Deal will be granted leave to amend any post-February 28, 2023 municipal liability claims against Lawrence County.

**D. ADA Discrimination Claim**

Even if the County Defendants were not entitled to immunity for their actions, Ms. Deal fails to sufficiently plead facts to establish her remaining federal and state law claims. Ms. Deal brings a discrimination claim under the Americans with Disabilities Act against the County Defendants at Count V of the Second Amended Complaint. She claims the County Defendants discriminated against her "based upon perceived mental disability." (ECF No. 92, at ¶ 138). The County Defendants argue that Ms. Deal fails to allege facts to establish any ADA disability discrimination claim. Ms. Deal argues that she alleged sufficient facts to establish all of the requisite elements of an ADA disability discrimination claim.

To state a claim for discrimination under the ADA, a plaintiff must establish that, (1) she is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of her disability. *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018).

Ms. Deal does not plead any facts to establish that any of the County Defendants discriminated against her based upon any disability or perceived disability that she has. Any mention of disability discrimination within the Second Amended Complaint is bare and

conclusory; and thus, insufficient to establish any of the requisite elements for an ADA discrimination claim. As such, the County Defendants' Motion to Dismiss Ms. Deal's ADA disability discrimination claims, at Count V, will be granted. Said claims will be dismissed. As the Court cannot say that amendment would be futile, Ms. Deal will be granted leave to amend her ADA claims.

**E. Civil Rights Conspiracy and Criminal Misconduct Claims**

Ms. Deal brings civil rights conspiracy claims against the County Defendants under 42 U.S.C. §§ 1983 and 1985[3] at Count VIII of the Second Amended Complaint. The County Defendants argue that Ms. Deal fails to allege facts to establish the requisite elements for any civil rights conspiracy claim. Ms. Deal argues that she has pled facts to show that each of the County Defendants participated in a conspiracy to violate her civil rights. (ECF No. 104, at 16-20).

To bring a successful claim of civil rights conspiracy, a plaintiff must establish that the object of the conspiracy was a deprivation of a federally protected right, and the plaintiff "must provide some factual basis to support the existence" of agreement and concerted action. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018). "To show agreement, [a plaintiff] must demonstrate that state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights, and in the absence of direct proof, that meeting of the minds or understanding or agreement to conspire can be inferred from circumstantial evidence." *Id.* at 295.

[3] It is unclear from the face of the Second Amended Complaint what provision of § 1985 Ms. Deal brings her conspiracy claims under. Given the context of her allegations, it seems § 1985(3) would be most relevant. However, § 1985(3) requires "'some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action.'" *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Ms. Deal does not make any race or class-based allegations. As such, her § 1985 claims will be dismissed.

For the reasons stated above, Ms. Deal has not sufficiently alleged facts to establish the requisite elements to show that she was deprived of any federally protected right, nor does she allege any facts to show that any of the County Defendants had reached any agreement to deprive her of a federally protected right. All of Ms. Deal's claims, concerning a possible conspiracy, are bare and conclusory. As such, the County Defendants' Motion to Dismiss Ms. Deal's civil rights conspiracy claims, at Count VIII, will be granted. Said claims will be dismissed. As the Court cannot say that amendment would be futile, Ms. Deal will be granted leave to amend these claims.

**F. State Law Claims**

At Counts X-XV, Ms. Deal brings a variety of state tort claims against the County Defendants. The County Defendants argue that they have immunity to these claims under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), such that all of the claims against them should be dismissed. (ECF No. 96, at 16). The County Defendants also argue that Defendants Papa and DeMonaco are immune to Ms. Deal's alleged state claims, because they are judicial court actors who are entitled to sovereign immunity. (*Id.*). Ms. Deal does not respond to these arguments related to her state law claims within her responsive brief.

The PSTCA, 42 Pa. Cons. Stat. § 8541, et seq. provides that "no local agency shall be liable for any damages on account of injury to a person or property caused by any act of the local agency or an employee thereof or any other person" unless it falls within one of the exceptions enumerated in the Act. 42 Pa. C.S.A. § 8541. The PTSCA also bars claims brought against individuals who are employees of a local agency. 42 Pa. C.S. § 8545; *See also Patterson v. Armstrong County Children and Youth Services*, 114 F. Supp. 2d 512, 543 (W.D. Pa. 2001).

When it comes to court actors, under Pennsylvania law, the "Commonwealth and its officials and employees acting within the scope of their duties" are entitled to sovereign immunity. 1 Pa. C.S.A. § 2310. This includes courts of common pleas. *Russo v. Allegheny Cnty.*, 125 A.3d 113, 118 (Pa. Cmwlth. 2015), *aff'd*, 150 A.3d 16 (2016). "Commonwealth government" includes "the courts and other officers or agencies of the unified judicial system," and the term "court" includes "any one or more of the judges of the court[.]" 42 Pa. C.S.A. § 102; *see also* Pa. Const. Art. V, § 1. Sovereign immunity's protection applies regardless of whether Commonwealth employees are sued in their official or individual capacities. *Deforte v. Borough of Worthington*, 364 F.Supp.3d 458, 486 (W.D. Pa. 2019), *aff'd*, 844 Fed.Appx. 511 (3d Cir. 2021); *See* Blount v. Folino, 2011 WL 2489894, at *16 (W.D. Pa. 2011); *Mullin v. Com., Dep't of Transp.*, 870 A.2d 773, 779 (Pa. 2005).

The allegations contained within Ms. Deal's Second Amended Complaint do not show that any of the exceptions enumerated under 42 Pa. C.S.A. § 8541(b) apply in this case. Further, Plaintiff has not plead sufficient facts to allege that the County Defendants acted with malice or willful misconduct in their alleged actions. Additionally, Ms. Deal does not plead facts sufficient to overcome the sovereign immunity for Defendants Papa and DeMonaco related to the state law claims at Counts X-XV. As such, the County Defendants' Motion to Dismiss the state law claims and counts, at Counts X-XV of the Second Amended Complaint, will be granted. Said state law claims will be dismissed. As the Court cannot say that amendment would be futile, Ms. Deal will be granted leave to amend these claims.

## IV. Conclusion

For the reasons stated above, the County Defendants Motion to Dismiss will be granted in full. A separate order to follow.

DATED: August 31, 2026

BY THE COURT:

Marilyn J. Horan