**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| MARGARET S DEAL,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE COUNTY, *et al*.,<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-00303-MJH |

**MEMORANDUM OPINION**

On February 28, 2025, Pro Se Plaintiff, Margaret Deal, filed the present case. (ECF No. 1). On May 26, 2025, Ms. Deal filed a 78-page Amended Complaint against nineteen defendants, alleging various constitutional claims pursuant to 42 U.S.C. § 1983, a discrimination claim under Title II of the Americans with Disabilities Act, and various other state law claims, related to state dependency proceedings regarding her two minor children. (ECF No. 51). On February 18, 2026, Plaintiff filed an 81-page Second Amended Complaint. (ECF No. 92). Various Defendants subsequently filed motions to dismiss the Amended Complaint. On March 4, 2026, Defendant John Bongivengo, filed the present Motion to Dismiss and accompanying brief. (ECF Nos. 98 & 103). On March 18, 2026, Plaintiff filed an omnibus response to all Defendants' motions to dismiss. For the following reasons, Defendant John Bongivengo's Motion to Dismiss will be granted in full.

## I. Statement of Facts

Defendant, John Bongivengo, is a solicitor for Lawrence County Children and Youth Services ("LCCYS"). (*Id.* ¶ 17). Ms. Deal alleges that from February 17, 2021 until February 19,

2021, Mr. Bongivengo, along with other Defendants, withheld medical records of Ms. Deal's children. (*Id.* ¶ 43). Ms. Deal alleges that during a hearing held on July 22, 2021, Mr. Bongivengo, as Ms. Deal's "conflicted counsel," said "we know what's going on here, so let's just get on with it." Ms. Deal alleges that this suggests Mr. Bongivengo colluded with other Defendants. (*Id.* ¶ 55). Ms. Deal alleges that on November 9, 2023, Mr. Bongivengo, along with other Defendants, withheld a notice of a permanency petition from her, which obstructed her defense in the dependency hearings. (*Id.* ¶ 81). Ms. Deal alleges that on March 14, 2024, she voiced her opposition to Mr. Bongivengo's representation of Lawrence County Children and Youth Services, because of a conflict of interest. (*Id.* ¶ 85). Ms. Deal further alleges that, on August 28, 2024, Mr. Bongivengo, along with other Defendants, withheld parental capacity assessments from her and conspired to obstruct reunification with her children. (*Id.* ¶ 92). Relying on these allegations, Ms. Deal brings constitutional and state law claims against Mr. Bongivengo at Counts I-IV, VIII, X, XII-XIII, and XV of the Second Amended Complaint.

On March 14, 2024, Mr. Bongivengo represented LCCYS at a hearing related to Ms. Deal's children, and Ms. Deal was represented by her retained counsel. During the hearing, Mr. Bongivengo disclosed to the presiding Judge Acker that in July of 2020 he had previously been appointed to represent Ms. Deal before she retained private counsel. (ECF No. 97-1, at 3). Mr. Bongivengo attached the transcript for the March 14, 2024 hearing to his Motion to Dismiss.[1] During said hearing, Ms. Deal agreed to waive any conflict. Such waiver was recorded as follows:

[1] "… [A] federal court may take judicial notice of matters of record in state courts within its jurisdiction." *Berkowitz v. Philadelphia Chewing Gum Corporation*, 303 F.2d 585, 587 (3d Cir. 1962).

The Court: Okay. Ms. Esposito[2], Attorney Bongivengo at one time represented you.

Ms. Esposito: Correct.

The Court: Alright. And during that time there may have been confidential communications between you and your attorney, Mr. Bongivengo - - Attorney Bongivengo. Those communications are private, they're not disclosable by Attorney Bongivengo without your position and they may have an impact on how - - on what he knows and how he would handle this case as an attorney for Children and Youth Services. Do you understand that?

Ms. Esposito: I do.

The Court: And that creates a conflict. Now you've been - - it's been stated by your counsel in this case that you're waiving that conflict to let this case proceed?

Ms. Esposito: Correct.

The Court: Is that correct?

Ms. Esposito: Yes.

The Court: And are you doing that of your own free will?

Ms. Esposito: Yes.

The Court: Okay. Are you doing that only because you're afraid that if this doesn't happen and you don't waive it, the progress in this case towards reuniting the family would come to a halt or be delayed?

Ms. Esposito: No, that's not why I'm making it.

The Court: Alright, you don't have any qualms about Attorney Bongivengo proceeding?

Ms. Esposito: No. No.

***

The Court: Very well. The Court will proceed and the Court will take Judicial notice of the fact that we don't have conflict counsel anymore at this point in time. That we do have Jason Medure as the Solicitor for the County, who can step in in this case. Alright, but that's been waived.

(*Id.* at 3-6).

## II. Relevant Legal Standard

[2] At the time of the March 14, 2024 hearing, Ms. Deal's last name was Ms. Esposito.

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

## III. Discussion

### A. Conflict of Interest

As an initial matter, the Court will address the alleged conflict of interest created by Mr. Bongivengo's representation of LCCYS following his former representation of Ms. Deal. Mr. Bongivengo argues that Ms. Deal waived any conflict of interest at the March 13, 2024 hearing. (ECF No. 98, at 9-12). Ms. Deal argues that her waiver of the conflict at the hearing was legally invalid. (ECF No. 104, at 18).

When assessing the conduct of lawyers, federal courts look to the Rules of Professional Conduct of the state wherein the District Court resides.

> The determination as to whether to disqualify counsel because of a conflict of interest is within the discretion of the court. *Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir.1977). The Pennsylvania Rules of Professional Conduct, adopted by the Supreme Court of Pennsylvania in 1988 [hereinafter Rules of Conduct], have been adopted by the United States District Court for the Western District of

> Pennsylvania, and this court must apply those rules when determining the appropriate professional conduct of an attorney practicing in Pennsylvania. Local Rule 22. *See also Reading Anthracite Co. v. Lehigh Coal & Nav. Co.*, 771 F.Supp. 113, 114 (E.D.Pa.1991).
>
> *Euell v. Rosemeyer*, 153 F.R.D. 576, 577–78 (W.D. Pa. 1993).

The Rules of Professional Conduct discuss an attorney's duty to a former client as follows:

> Rule 1.9. Duties to Former Clients
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

PA ST RPC Rule 1.9.

The transcript of the March 14, 2024 hearing shows that Ms. Deal clearly gave informed consent to the waiver of any conflict of interest involving Mr. Bongivengo. At said hearing, Ms. Deal was represented by her retained legal counsel. Judge Acker directly asked Ms. Deal if she was waiving the conflict of interest with Mr. Bongivengo, if she was doing it of her own free will, and if she was aware that she did not have to waive the conflict. Ms. Deal affirmed that she had no problem with Mr. Bongivengo proceeding as counsel for LCCYS. (ECF No. 97-1, a 3-6). As such, Ms. Deal knowingly, willfully, and expressly waived any conflict of interest with Mr. Bongivengo at the March 14, 2024 hearing. She cannot now assert any conflict of interest to support any of her claims against Mr. Bongivengo.

**B. Statute of Limitations**

Mr. Bongivengo argues that many of Ms. Deal's claims against him are barred by the applicable statute of limitations. (ECF No. 98, at 8-9). Ms. Deal argues that the statute of limitations, regarding her claims against Mr. Bongivengo, should be tolled pursuant to the continuing violations doctrine. (ECF No. 104, at 18).

Constitutional claims brought under § 1983 are subject to a two-year statute of limitations period. "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir.2009). The limitations period for a § 1983 action is the limitations period for personal injury torts in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387, (2007). Pennsylvania has a two-year statute of limitations. *See Kach*, 589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). A claim accrues for statute of limitations purposes "when a plaintiff has a complete and present cause of action, that is, when [she] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Accordingly, a statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [her] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The accrual period for her § 1983 claims, that are based upon the removal of her children, began the date when her children were removed. *Daniels v. Harper*, 2024 WL 580874, at * 4 (E.D. Pa. Feb. 13, 2024) (citing *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009.")).

Ms. Deal also contends that the continuing violations doctrine applies in this case to toll the statute of limitations period related to her constitutional claims. The continuing violation doctrine provides an exception to the "strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." *Foster v. Morris*, 208 F. App'x 174, 177– 78 (3d Cir. 2006) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). The doctrine only applies when the alleged wrong "'is

more than the occurrence of isolated or sporadic acts.'" *Id.* (quoting *Cowell*, 263 F.3d at 292). The following factors are to be considered in making this determination:

> (1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292 (citations omitted). "The consideration of 'degree of permanence' is the most important of the factors." *Id.* If an act has a degree of permanence, then continuing violations doctrine is not a substitute for a plaintiff's "awareness of and duty to assert his/her rights" in a timely fashion. *Id.* at 295.

It is well-settled that the continuing violations doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a claim]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 154 (3d Cir. 1998) (quoting *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)). The Third Circuit has considered the continuing violations doctrine in the context of constitutional claims related to the removal of children, and has held that the removal of the child triggers plaintiff's awareness of their ability to bring suit. *See Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009."); *Moore v. Morrison*, 2022 WL 824102, at *5 (E.D. Pa. Mar. 18, 2022) (dismissing § 1983 claims as time-barred where the "amended complaint makes clear on its face that the plaintiffs knew at the time in January 2017 that their children were initially removed from their care;" and thus, "their claims related to the

removal of their children started accruing at that time"); *Samantha M. v. Stepanik*, 2020 WL 1250116, at *5 (W.D. Pa. Feb. 4, 2020).

The July 22, 2021 removal of Ms. Deal's children from her physical custody was an act that had an immediate degree of permanence. Any allegations that Ms. Deal makes against Mr. Bongivengo, related to the various dependency hearings, investigations, or interactions which relate to her children's removal started accruing from the July 22, 2021 date of removal. Ms. Deal has not pled any facts to show that the continuing violations doctrine applies to such claims, because her children were only removed once. Any allegations of constitutional claims against Mr. Bongivengo unrelated to her children's removal are their own contained constitutional claims which are also subject to the two-year statute of limitations.

Ms. Deal filed her initial Complaint on February 28, 2025. Thus, the two-year statute of limitations period will preclude any claims for conduct before February 28, 2023. As such, any pre-February 28, 2023 § 1983 constitutional claims against Mr. Bongivengo are untimely. Mr. Bongivengo's Motion to Dismiss Ms. Deal's pre-February 28, 2023 constitutional claims against him will be granted, and said claims will be dismissed. Ms. Deal will not be granted leave to amend these claims, as such amendment would be futile.

**C. Sufficiency of Allegations**

Ms. Deal also brings constitutional and state law claims against Mr. Bongivengo based upon alleged conduct which occurred after February 28, 2023. Mr. Bongivengo argues that Ms. Deal fails to allege facts sufficient to establish any constitutional or state law claims. Ms. Deal argues that she has sufficiently pled facts to allege such claims.

The standard to survive a 12(b)(6) motion requires that a plaintiff plead facts that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See*

*Iqbal,* 556 U.S. at 678. Bare and conclusory statements do not suffice. *Id.* Further, when bringing constitutional claims pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts to show how each defendant was personally involved in the events and occurrences giving rise to each individual claim. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Ms. Deal alleges that on November 9, 2023, Mr. Bongivengo withheld a notice of a permanency petition from her, which obstructed her ability to defend herself during dependency hearings. Ms. Deal also alleges that on August 28, 2024 Mr. Bongivengo withheld parental capacity assessments from her and conspired with other Defendants to obstruct reunification with her children. These are the only timely allegations related to Mr. Bongivengo and must alone establish the alleged claims against him. These post-February 28, 2023 alleged facts are insufficient to establish any of the alleged constitutional or state law claims against Mr. Bongivengo, each of which have specific elements that must be established. Ms. Deal's allegations fail to establish how Mr. Bongivengo was individually involved in each of the alleged claims. Such allegations are not sufficient to establish any of the constitutional or state law claims brought against Mr. Bongivengo. As such, Mr. Bongivengo's Motion to Dismiss will be granted as to all post-February 28, 2023 claims made against Mr. Bongivengo.

**D. Immunity**

Even if Ms. Deal had pled sufficient facts to allege her claims against Mr. Bongivengo, she must overcome the immunity he is entitled to as a solicitor for LCCYS. Mr. Bongivengo argues that, by virtue of his position as a county solicitor for LCCYS, he is entitled to immunity from the claims Ms. Deal brings against him. (ECF No. 98, at 7-8). Ms. Deal argues that Mr. Bongivnego's alleged conduct was administrative and not entitled to immunity. (ECF No. 104, at 17)

As regards immunity for those involved in children and youth proceedings, “CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings.” *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 495 (3d Cir. 1997). This quasi-prosecutorial immunity also extends to county solicitors, such as Mr. Bongivengo, who initiate and prosecute child dependency hearings. *Dunsmore v. Chester Cnty. Child. & Youth Servs.*, 1993 WL 101200, at *2 (E.D. Pa. Apr. 6, 1993); *Ernst*, 180 F.3d at 496-97. Thus, Mr. Bongivengno, as solicitor for LCCYS, is entitled to immunity.

The allegations made against Mr. Bongivengo only relate to his conduct in his capacity as solicitor for LCCYS. The alleged November 9, 2023 withholding of notice of a permanency petition from Ms. Deal and his August 28, 2024 withholding of parental capacity assessments clearly relate to his function as county solicitor in preparing for, initiating, and prosecuting the dependency hearings.

As such, Mr. Bongivengo is immune to the claims brought against him. For this reason, and the reasons stated above, Mr. Bongivengo’s Motion to Dismiss the claims against him will be granted. All claims and counts against Mr. Bongivengo will be dismissed. As amendment would be futile, Ms. Deal will not be granted leave to amend her claims.

## IV. Conclusion

For the reasons stated above, Mr. Bongivengo’s Motion to Dismiss will be granted in full. A separate order to follow.

DATED: August 31, 2026

BY THE COURT:

Marilyn J. Horan