**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| MARGARET S DEAL,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE COUNTY, *et al.*,<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-00303-MJH |

**MEMORANDUM OPINION**

On February 28, 2025, Pro Se Plaintiff, Margaret Deal, filed the present case. (ECF No. 1). On May 26, 2025, Ms. Deal filed a 78-page Amended Complaint against nineteen defendants, alleging various constitutional claims pursuant to 42 U.S.C. § 1983, a discrimination claim under Title II of the Americans with Disabilities Act, and various other state law claims, related to state dependency proceedings regarding her two minor children. (ECF No. 51). On February 18, 2026, Plaintiff filed an 81-page Second Amended Complaint. (ECF No. 92). Various Defendants subsequently filed motions to dismiss the Amended Complaint. On March 4, 2026, Defendants Daniel Alsdorf and Chastity Minnitte, filed the present Motion to Dismiss and accompanying brief. (ECF Nos. 99 & 100). On March 18, 2026, Plaintiff filed an omnibus response to all Defendants' motions to dismiss. For the following reasons, Defendants Daniel Alsdorf and Chastity Minnitte's Motion to Dismiss will be granted in full.

## I. Statement of Facts

Chastity Minnitte and Daniel Alsdorf, foster parents in Crawford County, Pennsylvania, provided foster care for Ms. Deal's children, starting in March of 2023. (ECF No. 92, at ¶ 72).

Ms. Deal alleges that they acted under the color of state law through their contract with LCCYS. (*Id.* ¶¶ 21-22). Ms. Deal makes various broad and generalized allegations against Ms. Minnitte and Mr. Alsdorf, alleging that they were involved with other co-defendant's conduct. *See generally* (ECF No. 92).[1] Specifically, Ms. Deal alleges that, in March 2023, when her children were in Ms. Minnitte and Mr. Alsdorf's care, they refused phone calls Ms. Deal made to her children. (*Id.* ¶ 72). Ms. Deal also alleges that Defendants were involved in the decision to vaccinate her children on April 14, 2023, without Ms. Deal's consent. (*Id.* ¶ 74). Ms. Deal also alleges that, at an unspecified date, Ms. Minnitte "falsely alleged [Ms. Deal] harassed her own children to a former caseworker." (*Id.* ¶ 82). Ms. Deal further alleges that, after the Judge presiding over the dependency hearings issued a March 14, 2024 Order establishing a reunification plan, Defendants "defied the court's directive for therapeutic visits until January 29, 2025." (*Id.* ¶ 85).

## II. Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[1] The Court must read a pro se litigant's pleading liberally, but the litigant is not excused from complying with the rules of procedural and substantive law. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6)

motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

## III. Discussion

Ms. Deal brings constitutional and state claims against these two Defendants at Counts I, II, IV-VI, VIII, XII, and XIII of her Second Amended Complaint. Defendants argue that all of Ms. Deal's claims should be dismissed, because Ms. Deal's allegations are not sufficient to establish any of her claims. These Defendants also argue that they are not state actors, and that, if the Court does consider them to be state actors, they are immune from the claims brought against them. Ms. Deal responds, contending that these Defendants conspired with state officials to violate her constitutional rights; and thus, Defendants are considered state actors. (ECF No.104, at 28). Ms. Deal does not respond to any of these Defendants' other bases for dismissal.

### A. State Actors

Defendants argue that all of Ms. Deal's § 1983 claims against them fail, because they are not considered state actors. In support of this argument, Defendants rely on *Leshko v. Servis*, 423 F.3d 337 (3d Cir. 2005). Ms. Deal argues that Defendants' reliance on *Leshko* is misplaced, because these Defendants conspired with state actors, which makes these Defendants themselves state actors.

To bring a § 1983 claim, a plaintiff must show two essential elements: (1) that the conduct complained of was committed by a person under color or state law; and (2) that the conduct violated one of plaintiff's constitutional rights or privileges. *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2018). The Third Circuit in *Leshko* held that "foster parents in Pennsylvania are not

state actors for purposes of liability under § 1983." Thus, defense argues that these two Defendants are not considered state actors for the purposes of § 1983 claims. Ms. Deal's only allegations to establish these Defendants as state actors are that they are foster parents in Pennsylvania contracted with LCCYS. (ECF No. 92, at ¶¶ 21-22). *Leshako* is clear, foster parents in Pennsylvania are not considered state actors. Accordingly, Ms. Deal cannot bring any § 1983 constitutional claims against Defendants, because they are not state actors. Ms. Deal attempts to circumvent this fact, contending that Defendants conspired with state actors which transforms them into state actors themselves, despite the Third Circuit's holding in *Leshako*. However, Ms. Deal cites to no legal authority to support her contention, nor can the Court find any that supports the same.

As such, Defendants' Motion to Dismiss all of Ms. Deal's § 1983 constitutional claims against them will be granted. Said claims are dismissed. As amendment would be futile, Ms. Deal will not be granted leave to amend these claims.

**B. Sufficiency of Pleadings**

Defendants argue that Ms. Deal's pleadings lack the required specificity to establish any of her claims. Ms. Deal does not respond to this argument. As Defendants are not state actors and not subject to §1983 liability, the only remaining claims are the ADA discrimination claim, brought against Defendants at Count V, the state intentional infliction of emotional distress claims at Count XII, and the state claims for tortious interference of custodial rights at Count XIII.

Ms. Deal alleges that in March 2023, Defendants refused phone calls that she made to her children while they were in Defendants' care. Ms. Deal also alleges that Defendants were

involved in the decision to vaccinate her children, on April 14 2023, without Ms. Deal's consent. (*Id.* ¶ 74). Ms. Deal also alleges that, at an unspecified date, Ms. Minnitte "falsely alleged [Ms. Deal] harassed her own children to a former caseworker." (*Id.* ¶ 82). Ms. Deal further alleges that after the Judge presiding over the dependency hearings issued a March 14, 2024 Order establishing a reunification plan, Defendants "defied the court's directive for therapeutic visits until January 29, 2025." (*Id.* ¶ 85).

As an initial matter, Ms. Deal cannot rely on her allegations that Defendants facilitated her children's vaccinations against her will to support any of her claims, because such actions were conducted pursuant to a court order; and thus, Defendants were entitled to immunity for said actions. The Third Circuit has held that, "it is well-settled that 'action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages.'" *McGeachy v. Doe*, 444 Fed. Appx. 510, 512 (3d Cir. 2011) (citing *Hamilton v. Leavy*, 322 F.3d 776, 782-83 (3d Cir. 2003)). Ms. Deal pled that her children's vaccinations were conducted pursuant to a court order. (ECF No. 91, at ¶ 74). As such, any of her claims based upon the children's vaccinations are subject to absolute immunity. Defendants' Motion to Dismiss Ms. Deal's § 1983 constitutional violations concerning her children's vaccinations, will be granted.

i. ADA Discrimination Claim

Ms. Deal brings an ADA discrimination claim against Defendants, at Count V of her amended complaint.

Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II ADA claims can only be brought against public entities. *Smith v. Pennsylvania Dept. of Corrections*, 2011 WL 4573364 (W.D. Pa. 2011).

Defendants Alsdorf and Minnitte are not public entities; Ms. Deal cannot bring Title II ADA claims against them. As such, Ms. Deal's ADA discrimination claims against Defendants, at Count V of the amended complaint, will be dismissed. Ms. Deal will not be given leave to amend these claims.

ii. IIED Claim

Ms. Deal brings Intentional Infliction of Emotional Damage ("IIED") claims against Defendants at Count XII of the amended complaint. To state and IIED claim, a plaintiff must allege that, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476, 482 (1997), *aff'd* 554 Pa. 134, 720 A.2d 745 (1998). Extreme and outrageous conduct is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." *Id.* at 745 (citing Restatement (Second) of Torts § 46, cmt. d (1965)).

Ms. Deal's allegations against Defendants, that Defendants refused to answer phone calls made by Ms. Deal to her children, that Ms. Minnitte accused Ms. Deal of harassing her children, and that Defendants helped delay Ms. Deal's children's attendance at court ordered therapeutic sessions do not rise to the level of extreme and outrageousness required to establish an IIED claim. As such, Ms. Deal's IIED claims against Defendants, at Count XII of the amended complaint, will be dismissed. As the Court cannot say that amendment would be futile as to Ms.

Deal's IIED claims, she will be granted leave to amend these claims against Defendants' Alsdorf and Minnitte.

iii. Tortious Interference

Ms. Deal brings state claims for tortious interference against Defendants at Count XIII of the amended complaint.

In support of her tortious interference of custodial rights claim, Ms. Deal cites to *Bartanus v. Lis*, 480 A.2d 1178, 1187-88 (Pa. Super. Ct.), relying on language in the concurrence that suggests such a claim may exist. However, the majority in this case held "that a cause of action by a parent for the alienation of child's affections is not cognizable in Pennsylvania." *Id.* at 1181. Thus, Ms. Deal's claim for tortious interference against Defendants will be dismissed. As amendment would be futile, Ms. Deal will not be granted leave to amend these claims.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be granted. A separate order to follow.

DATED: August 31, 2026

BY THE COURT: